Florence PENDLETON, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Respondent,

De Long Harris, Jr., Intervenor.

No. 79-1270.

District of Columbia Court of Appeals.

Argued March 23, 1982.

Decided Aug. 2, 1982.

Mortimer F. Coward, with whom John T. Fowler, Washington, D. C., was on the brief, for petitioner.

William H. Lewis, Washington, D. C., for respondent.

De Long Harris, Washington, D. C., for intervenor.

Before NEBEKER, MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Petitioner, an unsuccessful write-in candidate for an Advisory Neighborhood Commission seat in the November 1979 election, successfully appealed from a decision of the Board of Elections and Ethics which credited two contested write-in votes to intervenor De Long Harris, Jr. and certified him winner of the election by a one-vote margin. *See Pendleton v. District of Columbia Board of Elections and Ethics*, D.C.App., 433 A.2d 1102 (1981) (per curiam) (reversing Board of Elections decision which credited write-in ballot marked "Mr. Long" to intervenor, declaring election a tie, and remanding to Board for implementation of tie-breaking procedures). This division granted respondent's motion for rehearing and we now vacate our prior decision and affirm the ruling of the Board of Elections

and Ethics that declared intervenor De Long Harris, Jr. winner of this election.[1]

## I.

Petitioner and intervenor were the sole registered write-in candidates[2] in the November 1979 election for the office of Member of Advisory Neighborhood Commission No. 5C, Single Member District No. 07. On November 21, 1979, the Board certified the results of the election, declaring intervenor the winner. The results were as follows: De Long Harris, Jr.—39 votes; Florence Pendleton—37 votes; other write-in ballots —23 votes. Pursuant to D.C.Code 1978 Supp., § 1–1111(a) [now recodified as D.C. Code 1981, § 1–1315(a)] petitioner, as an unsuccessful candidate, filed a petition requesting that the Board conduct a recount of the election results. A recount was conducted by an elections administrator, and petitioner successfully challenged one write-in ballot previously credited to intervenor: the ballot was marked "Mr. Long." Petitioner was unsuccessful in her challenge of a ballot marked "Harris," and for some reason not clear on the record, an additional ballot previously credited to intervenor was lost during the recount. Thus, the results of the recount as certified by the elections administrator to the Board were: De Long Harris, Jr.—37 votes; Florence Pendleton— 37 votes; Mr. Long, Ernest Kinard, Frank Smith, Rick Sowell and Betty Benjamin—1 vote each; and blanks (unvoted)—22 ballots.

Intervenor then filed with the Board a petition to reconsider the decision of its elections administrator to deduct from intervenor's totals the ballot marked "Mr. Long." Petitioner asked the Board to review the administrator's decision as it related to the ballot marked "Harris." During a public session of the Board, the parties presented their arguments, and the Board concluded that the persons casting ballots for "Harris" and "Mr. Long" intended to vote for De Long Harris, Jr. On appeal petitioner challenges the Board's decision to credit these ballots to intervenor.

## II.

As the parties on appeal dispute the proper scope and nature of our review of the Board's decision in the instant case we first address this question.

We derive our authority to review elections from D.C.Code 1978 Supp., § 1– 1111(a) and *id.* 1980 Supp., § 1–1111(b) [now recodified as D.C.Code 1981, § 1– 1315(a) and (b)]. Subsection (a) of the statute provides for action by the Board of Elections and Ethics upon timely request of a candidate, while subsection (b) provides for review of elections by this court upon petition of a voter.

Subsection (b) of the statute provides in relevant part:

Within seven days after the Board certifies the results of an election, *any person who voted in the election may petition the District of Columbia Court of Appeals* to review such election. In response to such a petition, the court may set aside the results so certified and declare the true results of the election, or void the election in whole or in part. To determine the true results of an election the court may order a recount or take other appropriate action, whether or not a recount has been conducted or requested pursuant to subsection (a) .... The court shall void an election only for fraud, mistake, ... or other defect, serious enough to vitiate the election as a fair expression of the will of the regis-

---

1. We have concluded that this case is not moot, despite the fact that the term of office at issue has expired. It falls within the class of cases which are "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), and, furthermore, the scope of the issues raised in this appeal extends well beyond the rights of the specific parties. *See* 5 Am.Jur.

2d *Appeal and Error* §§ 768–69; Annot., 132 A.L.R. 1185 (1941). *See also Carroll v. Schneider,* 211 Ark. 538, 201 S.W.2d 221 (1947); *Sartin v. Barlow,* 196 Miss. 159, 16 So.2d 372 (1944) (en banc).

2. Accordingly, their names did not appear on the printed election ballots for that office.

tered qualified electors voting therein.... The decision of such court shall be final and not appealable. [Emphasis supplied.]

In *Gollin v. District of Columbia Board of Elections and Ethics*, D.C.App., 359 A.2d 590, 594 (1976) we held that our purpose in reviewing elections under subsection (b) was to insure that no voter was disenfranchised through improper interpretation by the Board, that the results certified by the Board are in fact the true results, and that the Board performed its duty in a constitutionally and statutorily correct manner. The *Gollin* court further held that in reviewing an election pursuant to this subsection

> "reliable evidence ... should be searched to effectuate the voter's wish and preserve the franchise." ... [T]he standard to be applied in determining intent is not one of absolute sureness. Reasonable certainty is enough. In attempting to discern intent, moreover, this court is mindful that a prime purpose of Congress in formulating the District of Columbia Elections law was to keep the franchise open to as many people as possible. [*Id.* at 595 (quoting *Petition of Fifteen Registered Voters of the County of Sussex*, 129 N.J.Super. 296, 301, 323 A.2d 521, 523, *petition for certification denied*, 65 N.J. 577, 325 A.2d 711 (1974)) (citations omitted).]

Subsection (a) of this statute, on the other hand, provides in relevant part that "[i]f within seven days after the Board certifies the results of an election, *any qualified candidate* at such election *petitions the Board* to have the votes cast at such election recounted in one or more voting precincts, the Board shall order such recount" (emphasis supplied). As the petitioner in the instant case, a candidate, appeals from a Board decision rendered pursuant to a recount request, we must determine the nature and scope of our review of action taken by the Board under this subsection of the statute.

The Board argues that we should apply the *Gollin* standard and require that its decision be based upon reliable evidence from which the true intent of the voter can be ascertained with reasonable certainty. Intervenor, on the other hand, contends that the Board was required to base its decision on "reliable, probative and substantial evidence" of record pursuant to D.C. Code 1978 Supp., § 1–1509(e). In response the Board argues that the substantial evidence test is inapplicable because the District of Columbia Administrative Procedure Act [*id.* §§ 1–1501 *et seq.*] excludes "proceedings in which decisions rest solely on ... elections" from the definition of a contested case and hence from the substantial evidence requirement. *See id.* §§ 1–1502(8)(C), –1509(e). Although at first blush the arguments might appear to pose a distinction without a difference, we need not draw fine line definitions between "reasonable certainty" and "substantial evidence"; the statute provides the solution as to both the standard and scope of our review.

Agency decisions in contested cases must be based upon "reliable, probative, and substantial evidence" of record. *Id.* § 1–1509(e). The code defines a contested case as "a proceeding before ... any agency in which the legal rights, duties, or privileges of specific parties are required by any law ... to be determined after a hearing ... before an agency ...." *Id.* § 1–1502(8). However, this subsection specifically excludes "proceedings in which decisions rest solely on inspections, tests, or elections" from the definition of a contested case.

The Board's decision in the instant case is an order in a contested case within the meaning of the Administrative Procedure Act. The recount conducted by the Board's elections administrator and the subsequent appeal from this decision to the Board were proceedings in which the agency determined, as required by law,[3] the legal rights

---

**3.** D.C.Code 1978 Supp., § 1–1111(a) imposes a seven-day limit within which candidates must petition the Board for a recount. Petitioner

complied with the statute by filing her recount petition on November 26, 1979, five days after the Board certified the results of the election on

of the candidates following a hearing. *See* D.C.Code 1978 Supp., § 1–1111(a). While the decision in the instant proceeding obviously involves an election it cannot be said to be a decision resting *solely* upon an election and therefore excluded from the definition of a contested case. The legislative history of the "elections" exception and the nature of the instant proceeding lead us to this conclusion.

What constitutes a proceeding in which a decision rests solely on an election is a question of first impression not only in this jurisdiction but also among courts which have construed the corresponding subsection of the federal Administrative Procedure Act. *See* 5 U.S.C. § 554(a) (1976).[4]

The legislative history of this subsection in the District of Columbia Administrative Procedure Act reveals that proceedings such as elections, tests and inspections were excluded from the definition of contested cases because they are "traditionally . . . not susceptible to adjudicatory process." Griffin, *The District of Columbia Administrative Procedure Act: Its History, Provisions, and Interpretation*, 61 GEO. L.J. 575, 592 (1973) (footnote omitted) (citing S. REP.NO. 1581, 90th Cong., 2d Sess. 11 (1968); H.R.REP.NO. 202, 90th Cong., 1st Sess. 5 (1967)). Similarly, the legislative history of the corresponding subsection of the federal Act reveals that these categories of proceedings were exempted because "those methods of determination do not lend themselves to the hearing process." S.REP.NO. 752, 79th Cong., 1st Sess. 16 (1945), *reprinted in* ADMINISTRATIVE PROCEDURE ACT LEGISLATIVE HISTORY, 79th Cong., 2d Sess. 1944–46 at 202; *see also* H.R.REP.NO. 1980, 79th Cong., 2d Sess. 27 (1946), U.S.Code Cong. & Admin.News 1946, p. 1195, *reprinted in* ADMINISTRATIVE PROCEDURE ACT LEGISLATIVE HISTORY at 261.

While no reported case has construed the language which exempts elec-

tions from the procedural requirements applicable to adjudicatory proceedings, the "inspection" and "test" exceptions of the federal Act have been construed judicially. As the DCAPA is modeled on the federal Act to a great extent, particularly with respect to the definition of adjudicatory proceedings, judicial constructions of analogous provisions in the federal Act are persuasive. *See Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission*, D.C.App., 402 A.2d 36, 45 (1979); Griffin, *supra* at 590–91.

In *Door v. Donaldson*, 90 U.S.App.D.C. 188, 195 F.2d 764 (1952), the court reviewed a procedural due process challenge to proceedings through which the Postmaster General determined that certain mail was obscene. The court held that such a proceeding did not fall within the "inspections" exception and, therefore, that the Postmaster General was bound to observe procedural requirements applicable to adjudications. The court concluded that

> the Act exempts from the requirement of a full hearing, because they "rest solely on inspections" only decisions that turn either upon physical facts as to which there is little room for difference of opinion, or else upon technical facts like the quality of tea or the condition of airplanes, as to which administrative hearings have long been thought unnecessary. The nature of appellant's films was not even plainly visible without the use of somewhat elaborate projection machinery. [*Id.* at 190, 195 F.2d at 766.]

*Compare Feldman v. State Board of Bar Examiners*, 438 F.2d 699, 703 n. 6 (8th Cir. 1971) (state bar examination held exempt from procedural requirements applicable to adjudications pursuant to the "test" exception of the federal APA). *See generally* 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE, § 12:12 (2d ed. 1979).

November 21, 1979. Accordingly, the Board was required by law to conduct this proceeding.

4. D.C.Code 1978 Supp., § 1–1502(8)(C) mirrors the language of 5 U.S.C. § 554(a) (1976), which excludes proceedings in which decisions rest solely on inspections, tests, or elections from the procedural requirements applicable to adjudications conducted by federal administrative agencies.

■ Applying this rationale to the circumstances of the instant case, it is apparent that the Board was facing a controversy between opposing candidates which could only be resolved through the adjudicatory process. The issue here was not one which could be settled by a mere recount—the manual tabulation of unambiguous ballots. In conducting this recount this elections administrator was required not only to examine and count the ballots, but to consider extrinsic evidence in an effort to ascertain the intent of voters who had marked their ballots ambiguously. This necessitated the conduct of a public hearing, the examination of extrinsic evidence, and consideration of the parties' arguments. The Board's decision was not based solely on "physical facts as to which there is little room for difference of opinion" or "technical facts." *See Door, supra,* 90 U.S.App.D.C. at 190, 195 F.2d at 766. The decision was not based solely upon election results as would, for example, the mere certification of unchallenged ballots. Rather, this proceeding clearly lent itself to a hearing and, hence, does not fall within the "elections" exception to the DCAPA definition of contested cases.

Accordingly, the procedural requirements applicable to contested cases applied to this proceeding and the Board was required to base its decision on substantial evidence of record. *See In re Haworth,* D.C.App., 258 A.2d 447, 448–49 (1969) ("To the extent that the cases present for review determinations of fact by the Board we will review to determine whether the findings of the Board are supported by substantial evidence and will not undertake an independent evaluation of the evidence.")

Our holding is not inconsistent with the construction of subsection (b) adopted by this court in *Gollin.* Subsection (b) of § 1–1111 authorizes this court to review elections directly upon petition of a *voter* and empowers us to "determine the true results of an election [by] order[ing] a recount or . . . other appropriate action." Under *Gollin* we exercise this broad review power by seeking reliable evidence in the record which points with reasonable certainty to the true intent of a voter. In contrast, subsection (a) requires the *Board* to act upon the request of a *candidate,* and does not provide for direct review by this court. Consequently, we review Board decisions rendered pursuant to subsection (a) by virtue of our authority to review agency orders in contested cases. D.C.Code 1978 Supp., § 1–1510. In our view, the statute confers broader authority upon this court where a voter, rather than a candidate, challenges an election. We find this scheme consistent with the intent of Congress "to keep the franchise open to as many people as possible" in enacting legislation governing elections in the District of Columbia. *Gollin, supra* at 595 (citations omitted).

### III.

■ Before turning to consider the weight of the evidence in light of our construction of the statute, we look to petitioner's challenge to the nature of the evidence. Petitioner contends that the Board relied upon improper evidence in reaching its decision to credit the two contested ballots to intervenor. The argument is premised upon a reading of a Board regulation.

At the time of the contested election, the Rules and Regulations of the Board of Elections and Ethics provided

> In the case of a write-in vote, no ballot shall be regarded as defective due to unclear writing, misspelling of a candidate's name, or by abbreviation, addition, omission or use of a wrong initial in the name. Every ballot shall be counted for the candidate for who[m] it was intended, if the elector's intent can be ascertained from the ballot itself. [§ 132.4(e)(4)(vii), 25 DCR 3823 (10/27/78).]

Petitioner urges that this regulation limits the Board in its consideration of evidence to the "ballot itself" and nothing else. The Board argues that the regulation permits and indeed requires that it consider—as it has done in practice—extrinsic evidence.

We find the Board's interpretation of this regulation to be the only reasonable one. The regulation cannot be read by isolating two words in the last sentence; it must be read in its entirety. The regulation prohibits the Board from disregarding, as defective, a ballot which is [on its face] unclear because of writing, spelling, etc.; it *requires* that the Board count that ballot if it can determine a voter's intent from its face. In the case of a write-in ballot which is unclear on its face the Board must *compare* that face with extrinsic evidence in ascertaining intent. In the instant case, for example, it was impossible to determine the voters' intent from the contested ballots alone; at a minimum, reference to the list of registered write-in candidates was necessary.

■ When the Board applies and interprets its own regulations we must defer to the Board and may not substitute our own interpretation unless the agency's construction is clearly erroneous. *Goto v. District of Columbia Board of Zoning Adjustment,* D.C.App., 423 A.2d 917, 924 (1980); *Capitol Hill Restoration Society v. Zoning Commission,* D.C.App., 380 A.2d 174, 181–82 (1977). We refuse to interpret this regulation so as to imply an absurd result. We hold that the Board reasonably interpreted its regulation in the context of this case and therefore properly took cognizance not only of the contested ballots but also of the names of the registered candidates, voter registration rolls, and sworn testimony concerning intervenor's nicknames.

## IV.

■ Substantial evidence is " 'more than a mere scintilla' " of evidence; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Liberty v. Police and Firemen's Retirement and Relief Board,* D.C.App., 410 A.2d 191, 192 (1979) (quoting *Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 384 A.2d 412, 418 (1978) (citations omitted)). On appeal we do not review the record of an administrative proceeding de novo but, rather, examine the record to determine whether the agency could reasonably have found the facts as it did. *Id.*

■ We hold that the Board's decision to credit to intervenor the ballot marked "Mr. Long" was supported by substantial evidence. In addition to the ballot, the Board had before it sworn testimony that intervenor registered as a write-in candidate for this office, conducted an active campaign, that he answered to the nickname "Long," and that no other male "Long" was listed on voter registration rolls for this ANC district. Furthermore, the evidence clearly revealed that "Long" is a part of intervenor's first name. While other ballots in this election were cast for persons not listed on the voter registration roll for this district, e.g., Betty Benjamin, Frank Smith and Rick Sowell, we find that the evidence of record is adequate to support the Board's finding that the voter intended to vote for De Long Harris, Jr.

■ Similarly, we hold that the Board correctly upheld the elections administrator's decision to credit to De Long Harris, Jr. the ballot marked "Harris." Given the fact that the sole registered candidates were named Harris and Pendleton, the Board could reasonably find that the "Harris" ballot was intended as a vote for intervenor.

Accordingly, we affirm the decision of the Board of Elections and Ethics with respect to the contested ballots challenged by petitioner and vacate our decision in *Pendleton v. District of Columbia Board of Elections and Ethics, supra.*[5]

*So ordered.*

---

5. Petitioner also contends that the election should be voided because election officials allowed nonresident electors to vote and also commingled ballots from other districts. Having reviewed the record, we, like the Board, are unable to discern any evidence to substantiate petitioner's claim. We therefore hold that the Board did not err in refusing to void the election on that basis.

NEBEKER, Associate Judge:

I would dismiss the petition for review as moot. This is a contested election case. The term of office at issue has expired. A new election has occurred and the next term is being served. No residue from the contested term remains. Neither this court nor the Board of Elections and Ethics can supply a remedy now. This court is controlled by the case or controversy jurisdictional stricture. *See Holley v. United States*, D.C.App., 442 A.2d 106 (1981), and *United States v. Cummings*, D.C.App., 301 A.2d 229 (1973). We cannot resurrect an elected term of office which has expired and no rights attendant to that expired term of office survive. This case is moot and must be dismissed. *See* 74 C.J.S. *Quo Warranto* § 23 (1951). *See also State ex rel. Wallen v. Miller*, 304 S.W.2d 654 (Tenn. 1957).

It is strange that my colleagues believe that this case is capable of repetition. Its uniqueness prevents repetition. Rather, I suggest my colleagues have an opinion and need a case to express it.