**J.C. & ASSOCIATES, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.**

**No. 99–AA–203.**

District of Columbia Court of Appeals.

Argued March 30, 2000.
Decided Aug. 2, 2001.

Philip M. Musolino, Washington, DC, for petitioner.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Petitioner J.C. & Associates applied for a permit to raze significant portions of a fire-damaged building that is also a designated historic landmark. After inspecting the structure, the Building and Land Regulation Administration (BLRA) denied the application on the ground that no emergency conditions existed that would necessitate immediate demolition of the structure and thus excuse petitioner's failure to satisfy applicable requirements of the Historic Landmark and Historic District Preservation Act of 1978 (the Historic Preservation Act), D.C.Code §§ 5–1001 et seq. (1994). Instead of pursuing its remedies under that Act, petitioner appealed the decision of the BLRA to respondent, the District of Columbia Board of Appeals and Review (BAR). Following an evidentiary hearing, the BAR upheld the BLRA. Petitioner now asks this court to reverse or vacate the decision of the BAR as being contrary to law and not supported by substantial evidence.

Two substantial questions are presented in this petition for review. The first is whether this court has jurisdiction to consider the petition. Our jurisdiction to afford direct review of agency actions is limited to rulings issued in the course of "contested cases," meaning proceedings in which the parties' rights are required by "law" to be determined after an adjudicative hearing. See D.C.Code § 1–1502(8). Construing the term "law" to encompass not only statutory enactments, but also validly promulgated administrative regulations and orders of the Mayor, we hold that the proceeding before the BAR met the definition of a contested case and that our jurisdiction is, therefore, intact.

The second question before us is whether petitioner had a right to obtain a demolition permit for its historic landmark building without complying with the Historic Preservation Act. Petitioner argued that the BLRA should have found that fire damage had rendered its building unsafe and issued it a demolition permit pursuant to the Unsafe Structures Act of 1899, D.C.Code §§ 5–601 et seq. (1994). We conclude, however, that petitioner had no right to bypass the Historic Preservation Act. Although that Act preserved the BLRA's discretionary authority to order demolition of unsafe buildings under the 1899 law, it did not confer on petitioner the right to compel the BLRA to exercise that authority when the agency elected not to do so. Since petitioner therefore was not entitled to a demolition permit under the Unsafe Structures Act, it was prohibited from obtaining such a permit by the Historic Preservation Act. Accordingly, we affirm the order of the BAR upholding the BLRA's denial of petitioner's application for a demolition permit.

## I.

Petitioner's building is located at 1429 Rhode Island Avenue, N.W. The building was damaged in a fire. Deeming the building unsafe and repairs not feasible, petitioner sought to raze the structure. Because the building had been designated an historic landmark, petitioner initially applied for a demolition permit in accor-

dance with the procedures set forth in the Historic Preservation Act.

Section 5 of that Act provides that no demolition permit shall be issued for an historic landmark "unless the Mayor finds that issuance of the permit is necessary in the public interest, or that failure to issue a permit will result in unreasonable economic hardship to the owner." D.C.Code § 5–1004(e). Petitioner's application for a demolition permit was referred to the Historic Preservation Review Board for its recommendation on whether these conditions were met. *See* D.C.Code § 5–1004(b). The Board recommended against granting the permit. Petitioner then requested a public hearing before the Mayor's Agent in accordance with D.C.Code § 5–1004(c).

Meanwhile, in an unrelated development, a building inspector from the BLRA issued a violation notice to petitioner for the 1429 Rhode Island Avenue structure. The notice stated that the building was in imminent danger of falling and directed petitioner to obtain a permit to raze it immediately. Although Section 5 of the Historic Preservation Act restricts the issuance of such permits for historic landmarks, Section 12 of the Act states that "[n]othing in this subchapter shall affect the authority of the District of Columbia to secure or remove an unsafe building or structure pursuant to" the Unsafe Structures Act of 1899. *See* D.C.Code § 5–1011(a) (1994). That Act provides, among other things, that if a building or structure "shall, from any cause, be reported unsafe, the Mayor shall examine such structure ... and if, in his opinion, the same be unsafe, he shall immediately notify the owner ... to cause the same to be made safe and secure, or that the same be removed, as may be necessary." D.C.Code § 5–601.

In response to the violation notice, and notwithstanding the pendency of its request for a demolition permit under the provisions of the Historic Preservation Act, petitioner submitted a new application to the BLRA for a permit to raze part of the building at 1429 Rhode Island Avenue. As this second application was triggered by a notice issued under the Unsafe Structures Act, it appeared to afford a way to bypass the restrictions and procedures set forth in the Historic Preservation Act.

To evaluate petitioner's second application, Ahmet Ozusta, the Chief of the Technical Review Branch of the BLRA's Permit Processing Division and formerly the BLRA's Chief Structural Engineer, conducted an inspection of the building. Ozusta reported that the building had sustained extensive fire damage, resulting in the collapse of its roof and upper flooring and the loss of lateral support for its walls, particularly the exterior masonry walls. Ozusta also found that the building had not been re-roofed or protected from the elements since the fire. Despite the damage, however, Ozusta concluded that the building could be saved if certain remedial measures were taken, including removal of loose bricks and other fire-damaged materials, reinforcement of the walls, stabilization or removal of the fire escape, and protection of the walls from the elements. Ozusta recommended that these remedial measures "be undertaken as early as possible to avoid further deterioration of the structure."

At petitioner's request, Jeffrey Overmiller, an independent structural engineer, also inspected the building. Overmiller's report, which was submitted to the BLRA, stated that the rear and side walls had suffered "significant deterioration," and constituted "a serious risk to human safety" in their current, unbraced condition. Overmiller recommended that the walls be

either shored up or demolished without delay, though he expressed some doubt about whether shoring the side walls would be safe or practical.

Although petitioner contended that "the obviously imminently dangerous condition of the property" required the immediate issuance of a demolition permit, BLRA Administrator Armando Lourenco disagreed. Himself a professional engineer with expertise in structural engineering, Lourenco had accompanied Ozusta in his inspection of the 1429 Rhode Island Avenue structure. Citing Ozusta's report, Lourenco concluded that conditions at the building were not "imminently dangerous" and therefore did not warrant a waiver of the requirements set forth in Section 5 of the Historic Preservation Act, D.C.Code § 5–1004. Lourenco therefore denied petitioner's second application for a demolition permit.

Petitioner's earlier permit application submitted pursuant to D.C.Code § 5–1004 was still pending at this point, and was scheduled for a hearing before the Mayor's Agent in a matter of days. Instead of proceeding with that application, however, petitioner withdrew it after Lourenco's decision and asked that the hearing be canceled. Explaining that "[t]he owners have elected to pursue other legally available remedies, including a request for the [BLRA] to exercise its authority under D.C.Code § 5–601," petitioner appealed Lourenco's decision to the BAR.

The BAR granted petitioner's request for an evidentiary hearing, which was held before a committee of three of its members. At the hearing petitioner's two witnesses, both of them general contractors, testified that the building at 1429 Rhode Island Avenue was on the verge of collapse and, except for the front third of the building, was unsalvageable and unsafe. In response, the District called Ozusta and

Lourenco to testify. Discounting the opinion of the BLRA building inspector who issued the violation notice because that inspector was not an engineer, Ozusta testified that the building as a whole remained safe, although it had loose bricks that could fall at any time. Ozusta blamed the owner of the building for allowing it to deteriorate, opined that it would be feasible to stabilize the building in a number of ways, and recommended that precautionary measures be taken immediately to avoid further deterioration. Agreeing with Ozusta, Lourenco testified that immediate action was not required to assure the safety of the building, that it was not in danger of collapse, and that the building could be saved, even though petitioner did not "want to do" what needed to be done. Lourenco based his determination on Ozusta's report, Overmiller's report, and his own personal inspection of the property.

Following the hearing, the BAR affirmed Lourenco's decision to deny petitioner's application for a demolition permit. The BAR held that its jurisdiction was limited to assessing whether that decision was "either arbitrary or capricious or clearly erroneous based on the facts." The BAR concluded that the BLRA had the authority under D.C.Code § 5–601 to waive petitioner's compliance with the Historic Preservation Act if it properly determined that the building was "imminently dangerous." The BAR found, however, that the BLRA determination that there was no imminent danger was "independent" and "objective," and was based on information from staff and outside sources that the agency "deemed appropriate, reasonable and reliable." The BAR concluded that the BLRA did not act arbitrarily or capriciously and that its decision was not erroneous.

## II.

Petitioner contends that the BAR erred by failing to apply the correct legal standard to its application for a demolition permit under the Unsafe Structures Act, by limiting the scope of its review, and by rendering a decision that was not supported by substantial evidence in the record. In essence petitioner argues that the evidence compelled a finding that its building was irremediably unsafe, and that the Unsafe Structures Act did not require the BLRA to find that the building was "imminently dangerous" in order to direct that it be razed.

The Corporation Counsel, representing the BAR, argues, first, that the BAR decision is not directly reviewable in this court because it was not issued in a "contested case" within the meaning of the D.C. Administrative Procedure Act. *See* D.C.Code § 1–1502(8) (1999). Intertwined with this challenge to our jurisdiction, but analytically distinct from it, is the government's second argument, that the Unsafe Structures Act is a grant of power to the Mayor that confers no private right to compel the issuance of a demolition permit. On the underlying merits, the government further argues that the BAR interpreted the Unsafe Structures Act correctly to require a finding of "imminent danger," considered petitioner's application *de novo*, and based its decision on substantial evidence in the record, crediting the opinions of two engineers over those of two contractors.

## A.

Under D.C.Code § 11–722 (1995), this court has jurisdiction to review orders and decisions of the Mayor and any agency of the District of Columbia "in accordance with" the District of Columbia Administrative Procedure Act (APA). *See* D.C.Code §§ 1–1501 to 1510 (1999). The APA in turn provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a *contested case,* is entitled to a judicial review thereof" upon filing a written petition for review in the District of Columbia Court of Appeals. *See* D.C.Code § 1–1510(a) (emphasis added). Thus, with exceptions not applicable here, direct appellate review of Mayoral or agency action in this court is available only for decisions in "contested cases." *See United States v. District of Columbia Bd. of Zoning Adjustment,* 644 A.2d 995, 996–97 (D.C.1994).

The APA defines the term "contested case" to mean, in pertinent part,

> a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency, but shall not include: ... (C) Proceedings in which decisions rest solely on inspections, tests, or elections....

D.C.Code § 1–1502(8). We have held that the hearing contemplated by this definition is an adjudicative, "trial-type" hearing. *See Chevy Chase Citizens Ass'n v. District of Columbia Council,* 327 A.2d 310, 314 (D.C.1974) (en banc). We have also held that provision of such a hearing does not satisfy the "contested case" requirement if it is merely discretionary with the agency; the hearing, we have said, must be compelled, at least "implicitly," by the Constitution or by other law (typically, by statute). *Id.; see also Francis v. Recycling Solutions, Inc.,* 695 A.2d 63, 69 (D.C.1997); *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 756 (D.C. 1993) (en banc).

It is undisputed that petitioner's appeal to the BAR was a "proceeding before the

Mayor or any agency" within the meaning of § 1–1502(8). The BAR is a component of the Executive Office of the Mayor, established "to conduct review of District of Columbia government agency actions ... and to provide final administrative decisions in cases under its jurisdiction, in accordance with the District of Columbia Administrative Procedure Act ... and other applicable laws and regulations." Mayor's Order ("M.O.") 96–27, 43 D.C.Reg. 1367 (March 5, 1996). If, as the District contends, the BAR is properly viewed as the Mayor's designated agent, then it falls within the APA definition of the term "Mayor." *See* D.C.Code § 1–1502(1)(A).[1] Alternatively, as a board that is required by the Mayor to administer the APA and other laws and regulations, the BAR is encompassed in the APA's definition of "subordinate agency." *See* D.C.Code § 1–1502(4).[2] *Cf. Gunnell Constr. Co. v. Contract Appeals Bd.*, 282 A.2d 556, 557–58 (D.C.1971) (holding that Contract Appeals Board is not a "subordinate agency" because it does not administer laws or rules adopted under the authority of law).

It is likewise undisputed that the BAR did in fact provide petitioner an adjudicative, trial-type hearing. Nonetheless, the District argues that the BAR proceeding in this case was not a "contested case" for two reasons. First, the hearing that the BAR conducted was not "required by any law ... or by constitutional right," as mandated by D.C.Code § 1–1502(8). Second, the decision of the BAR "rest[ed] solely on inspections" within the meaning of D.C.Code § 1–1502(8)(C), namely the inspections of petitioner's building at 1429 Rhode Island Avenue. We address each of these reasons in turn.

■ *Was a hearing "required by any law"?* Petitioner does not claim that it had a constitutional right to a trial-type hearing before the BAR on its application for a demolition permit. Thus, the first question we address is whether such a hearing was "required by any law" other than the Constitution. *See* D.C.Code § 1–1502(8).

The Historic Preservation Act provides that applicants for demolition permits are entitled to a hearing. *See* D.C.Code § 5–1004(c). Such hearings "shall be conducted in accordance with the applicable provisions of" the APA. *See* D.C.Code § 5–1012(b); *Donnelly Assoc. v. District of Columbia Historic Pres. Review Bd.*, 520 A.2d 270, 271–72 (D.C.1987). This statutory requirement can only mean a hearing that conforms to the requirements for a contested case that are set forth in the APA in D.C.Code § 1–1509. The Historic Preservation Act thus requires a trial-type hearing to adjudicate an application for a permit to demolish a historic landmark (and that the other requirements of a contested case also be met), and a final decision resulting from that hearing is directly reviewable in this court (as § 5–1012(b) itself states). *See, e.g., District of Columbia Pres. League v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 711 A.2d 1273 (D.C.1998); *District of Columbia Pres. League v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 646 A.2d 984 (D.C.1994).

1. "The term 'Mayor' means Mayor of the District of Columbia, or his or her designated agent." D.C.Code § 1–1502(1)(A).

2. "The term 'subordinate agency' means any officer, employee, office, department, division, board, commission, or other agency of the government of the District, other than an independent agency or the Mayor or the Council, required by law or by the Mayor or the Council to administer any law or any rule adopted under the authority of a law." D.C.Code § 1–1502(4).

Petitioner waived its right under the Historic Preservation Act to a trial-type hearing, however, when it withdrew its first application for a demolition permit on the eve of the hearing that was scheduled to take place before the Mayor's Agent pursuant to D.C.Code § 5–1004(c). And as the Corporation Counsel correctly contends, the Unsafe Structures Act, which petitioner invoked in pursuing its alternative route through the BAR, does not require a trial-type hearing under any circumstances, either explicitly or implicitly. The Unsafe Structures Act empowers the Mayor to perform inspections and order the repair or removal of any structure that is, "in his opinion," unsafe. *See* D.C.Code § 5–601(a). If the party responsible for the structure contests the Mayor's order, the Act does not provide for, let alone require, any kind of hearing to settle the dispute. Rather, instead of a hearing the Act provides that three disinterested appointees shall make "a careful survey of the premises" and, in a written report of their findings, decide the result. *See* D.C.Code § 5–602.

■ The fact that no statute entitled petitioner to a trial-type hearing before the BAR on its application for a demolition permit does not terminate our inquiry. Under the APA definition of the term "contested case," the question is whether any "law"—not merely any "statute"—required a hearing. *See* D.C.Code § 1–1502(8). The term "law" is not defined in the APA, and the legislative history does not shed light on its meaning. In the related context of construing the Freedom of Information Act, D.C.Code §§ 1–1521– to–1529 (1999), however, we have recognized explicitly that "law" and "statute" are not synonymous, and that "law" is not limited to legislative enactments of the Council or Congress. *See Newspapers, Inc. v. Metropolitan Police Dep't,* 546 A.2d 990, 1000 (D.C.1988). In particular, a validly promulgated administrative rule or regulation "has the force and effect of law, much like a statute." *Hutchinson v. District of Columbia,* 710 A.2d 227, 234 (D.C. 1998). *Accord, Teachey v. Carver,* 736 A.2d 998, 1005 (D.C.1999) ("regulations having been duly promulgated, they are the law"); *Dankman v. District of Columbia Bd. of Elections & Ethics,* 443 A.2d 507, 513 (D.C.1981) (en banc) ("Rules and regulations promulgated by Governmental establishments pursuant to statutory authority have the force and effect of law, and concededly are subject to the same tests as statutes.")

■ To be sure, some opinions of this court have stated that for a proceeding to constitute a "contested case," the "trial-type" hearing must be *statutorily* or constitutionally compelled." *Timus,* 633 A.2d at 756 (quoting *W.C. & A.N. Miller Dev. Co. v. District of Columbia Zoning Comm'n,* 340 A.2d 420, 422 (D.C.1975) (emphasis added)); *see also Donnelly Assoc.,* 520 A.2d at 276 (stating that a hearing must be "implicitly required by either the organic act or constitutional right") (quoting *Chevy Chase Citizens Ass'n,* 327 A.2d at 314). Those statements cannot be taken as settling the question, however, for the scope of the term "law" as it is used in D.C.Code § 1–1502(8) was not in issue.[3] Also, our decisions contain statements lending support to the view that "law" includes enactments other than statutes. For example, speaking of regulations of the Historic Preservation Review Board in

---

**3.** As has oft been remarked, "[t]he rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *McDaniels v. Brown,* 740 A.2d 551, 554 n. 4 (1999) (quoting *Murphy v. McCloud,* 650 A.2d 202, 205 (D.C. 1994)).

*Donnelly Associates,* 520 A.2d at 277, this court commented that "[o]f course, if the regulations required a trial-type hearing, the contested case proceeding would be required 'by law' and we would treat it as such." In *Communication Workers of America, Local 2336 v. District of Columbia Taxicab Comm'n,* we construed this dicta in *Donnelly Associates* to mean that "where petitioner can point to an agency regulation requiring a hearing, petitioner has overcome the first obstacle in establishing jurisdiction, *i.e.,* that an administrative hearing is statutorily or constitutionally compelled." 542 A.2d 1221, 1223 n. 7 (D.C.1988); *see also Palisades Citizens Ass'n v. District of Columbia Zoning Comm'n,* 368 A.2d 1143, 1147 (D.C.1977) (noting that where hearing was conducted as a contested case in accordance with Commission rules, "we see no reason now to view it otherwise").

■ If an adjudicative hearing is compelled by a non-legislative but nonetheless binding enactment, we think that the APA requirement of a hearing required by "any law" is met. We perceive no reason why "any law" needs to be given an artificially narrow construction that would limit the term to "any statutory law." So long as a trial-type proceeding is mandated, the underlying goal of ensuring that our role on review remains "in accord with the nature of an appellate tribunal," *Timus,* is fulfilled. *See* 633 A.2d at 781 (Steadman, J.,

dissenting). The alternative—requiring an additional and duplicative hearing in the Superior Court before eventual review in this court—would be unnecessary and inefficient, and would serve no obvious useful end.

The question before us in this case, then, is this: did "any law" other than a statute or the Constitution require an administrative trial-type hearing on petitioner's application for a demolition permit? The answer to that question lies in the applicable regulations and order of the Mayor pursuant to which petitioner obtained review in the BAR after its application for a demolition permit was denied.

Petitioner applied to the BLRA for a permit to raze its building at 1429 Rhode Island Avenue pursuant to 12 DCMR § 112.1 (1992 Supp.), a provision of the Construction Codes.[4] That provision did not require the BLRA to hold a hearing on the application. Under that provision and 12 DCMR § 123.2, however, petitioner had a right to appeal the denial of its application to the BAR.

The Mayor established the current BAR in M.O. 96–27 to review agency actions in accordance with the APA under the authority of Section 422 of the District of Columbia Self Government and Governmental Reorganization Act.[5] *See* D.C.Code § 1–242(6) and (11) (1999) (empowering the Mayor to delegate his functions to executive office agencies, and to promul-

4. The Construction Codes, which are consolidated in Title 12 of the District of Columbia Municipal Regulations, were adopted by the Department of Consumer and Regulatory Affairs (DCRA) and approved by the Council, pursuant to D.C.Code § 5–1309 and the delegation of authority in MAYOR's ORDER 87–259, 34 D.C.Reg. 8250 (November 13, 1987). Applications for demolition (and other construction-related) permits are controlled by the Construction Codes. *See* D.C.Code § 5–1303(a)(1).

The Construction Codes were amended and recodified in November 1999, after the events relevant to this appeal. *See* 46 D.C.Reg. 9410, *et seq.* (1999). The current version of the Codes continues to provide for appeals from adverse permit decisions to the BAR. *See* 12 DCMR §§ 108.1, 122.2 (1999 Supp.), 46 D.C.Reg. 9445, 9460.

5. Predecessor Boards of Appeals and Review were established (or reestablished) by orders of the Mayor or Commissioner dating back to 1955.

gate administrative orders to carry out those functions). The Mayor's Order provides that the BAR "shall consider" appeals from a variety of administrative decisions, specifically including appeals from denials of permits by the (DCRA). *See* 43 D.C.Reg. at 1367–68. Appeals are heard by hearing committees of the BAR, which have the power to subpoena witnesses and documents and to take testimony under oath. *See id.* at 1371, 1373–74. In making their decisions, hearing committees "shall" issue findings of fact and conclusions of law. *See id.* at 1372–73. The Mayor's Order expressly directs that hearing committee proceedings "shall be governed" by the APA, D.C.Code §§ 1–1501 *et seq. Id.* at 1373.

The appeal provisions of the Construction Codes and the Mayor's Order creating the BAR were promulgated under statutory authorization. Their validity has not been questioned, and we take them as having the force and effect of law. Furthermore, if the Mayor's directive that BAR hearings be governed by the APA means anything, we think that it can only mean that those hearings must comply with D.C.Code § 1–1509, the provision of the APA that specifies how hearings in contested cases must be conducted. Among other things, D.C.Code § 1–1509(b) explicitly contemplates trial-type hearings:

> In contested cases, except as may otherwise be provided by law, other than this subchapter, the proponent of a rule or order shall have the burden of proof. Any oral and any documentary evidence

may be received, but the Mayor and every agency shall exclude irrelevant, immaterial, and unduly repetitious evidence. Every party shall have the right to present in person or by counsel his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. Where any decision of the Mayor or any agency in a contested case rests on official notice of a material fact not appearing in the evidence in the record, any party to such case shall on timely request be afforded an opportunity to show the contrary.

D.C.Code § 1–1509(b). Furthermore, D.C.Code § 1–1509(c) provides, among other things, that "[t]he testimony and exhibits, together with all papers and requests filed in the proceeding, and all material facts not appearing in the evidence but with respect to which official notice is taken, shall constitute the exclusive record for order or decision." *Id.* No order may be issued "except upon consideration of such exclusive record, or such lesser portions thereof as may be agreed upon by all the parties to such case." *Id.*

By incorporating these requirements of D.C.Code § 1–1509, M.O. 96–27 entitled petitioner to a trial-type hearing in its appeal from the denial of its application for a demolition permit.[6] *Accord, Auger v. District of Columbia Bd. of Appeals & Review,* 477 A.2d 196, 206 (D.C.1984) (petitioner challenging revocation of a permit "had a right" to a contested case hearing before the BAR).[7] We therefore hold that

---

**6.** We pause to note that if an appellant was afforded an evidentiary hearing at the administrative agency level, that might obviate the need for a *de novo* evidentiary hearing before the BAR in order to comply with the APA, for the BAR might then be able to decide the appeal on the agency record. Petitioner in

this case, however, did not receive an evidentiary hearing in the BLRA.

**7.** *Auger,* which held that this court lacked jurisdiction to review challenged agency action where the petitioner did *not* invoke his right to a contested case hearing before the BAR, was decided under Organization Order

petitioner's hearing before the BAR was a trial-type hearing required "by law" within the meaning of the definition of a "contested case" set forth in D.C.Code § 1–1502(8).

*Did the decision "rest solely on inspections"?* Under the APA, "[p]roceedings in which decisions rest solely on inspections, tests, or elections" are excluded from the definition of the term "contested case." D.C.Code § 1–1502(8)(C). Respondent invokes this exclusion on the premise that the decision to deny petitioner's application for a demolition permit was based on inspections of the structural condition of the historic landmark at 1429 Rhode Island Avenue. *See* D.C.Code § 5–601(a), which provides that if a building is reported to be unsafe, "the Mayor shall examine" it, and if the building is unsafe "in his opinion," he shall cause it to be made safe or removed.

■ We are not persuaded that the exclusion under D.C.Code § 1–1502(8)(C) applies to the hearing before the BAR. The point of the exclusion is that inspections, tests and elections are methods of decision making that are inherently different from adjudication. They are excluded from the definition of "contested case" because, by their nature, they are " 'not susceptible to adjudicatory process.' " *Pendleton v. District of Columbia Bd. of Elections & Ethics,* 449 A.2d 301, 305 (D.C.1982) (quoting Joseph P. Griffin, *The District of Columbia Administrative Procedure Act: Its History, Provisions, and Interpretation,* 61 Geo. L.J. 575, 592 (1973)) (citations omitted). No one would suggest, for example, that the inspection of a building,

the testing of an applicant for a professional license, or the election of a public official should, or even could, be conducted as a trial in accordance with the requirements of D.C.Code § 1–1509(b) quoted above. Hence the APA takes care to state that such determinations are not subject to the hearing requirements that are appropriate to adjudications, which are set forth in D.C.Code § 1–1509. The same is true for sequent proceedings in which the decisions rest *solely* on inspections, tests or elections, for such ancillary proceedings by definition involve only the formal ratification or completion of the non-adjudicatory process in question.

However, the proceeding before the BAR that is provided by 12 DCMR § 123.2 and M.O. 96–27 for appellate review of a permit denial is not intended to be conducted as an inspection (nor, of course, as a test or an election). Nor is the proceeding intended to be a mere rubber stamp of the inspection that led to the permit denial. Rather, the proceeding on appeal to the BAR is a trial-type hearing at which the appellant is afforded the opportunity to present evidence, cross-examine opposing witnesses, and challenge the factual or legal basis of the denial of its application for a permit. In deciding the appeal, the BAR must certainly take the underlying inspection into account, but the BAR must also take any other relevant evidence presented at the hearing into account as well. The BAR also may be called upon, for example, to evaluate the credibility of witnesses, the adequacy of the information considered by the BLRA

---

* No. 112, D.C.Code, Title 1, Administration, Appendix (Supp.V, 1978) (hereinafter "Organization Order No. 112"). *See* 477 A.2d at 206. That order, a precursor of M.O. 96–27, also provided that BAR proceedings "shall be governed" by the APA. *See Organization Order No. 112 at 141.* We recognize that *Auger*

did not dispose of the precise question before us in this case, inasmuch as the opinion merely implied but did not actually decide that jurisdiction would have existed if the petitioner there *had* exercised his right to a BAR hearing. The considered opinion in the case lends strong support to our holding, however.

in denying a permit, and the proper application of the laws (such as the Historic Preservation and Unsafe Structures Acts) that may govern the appellant's right to a permit. In these respects the present case is like *Pendleton, supra,* where this court reviewed a decision of the Board of Elections and Ethics that resolved a dispute over write-in ballots in an election. *See Pendleton,* 449 A.2d at 303. Affirming our appellate jurisdiction, we said that "[w]hile the decision in the instant proceeding obviously involves an election it cannot be said to be a decision resting *solely* upon an election and therefore excluded from the definition of a contested case." *Id.* at 305 (emphasis in the original). We explained that the Board's decision "was not based solely upon election results as would, for example, [be] the mere certification of unchallenged ballots .... [and it] was not based solely on 'physical facts as to which there is little room for difference of opinion' or 'technical facts.'" *Id.* at 306 (quoting *Door v. Donaldson,* 90 U.S.App.D.C. 188, 190, 195 F.2d 764, 766 (1952)). Instead, the Board was required to conduct a public hearing, weigh extrinsic evidence, and consider the parties' arguments. *See Pendleton,* 449 A.2d at 306.

Noting that the inspection exclusion derives from the federal Administrative Procedure Act, however, respondent invites us to adopt the view espoused by the Department of Justice that it "is applicable even though a statute requires an opportunity for an agency hearing" so long as the agency decision is based "mainly" on an inspection, test or election:

> thus the words "rest solely" do not mean that the exemption is available only where decisions are based solely upon inspections, tests, or elections, without opportunity for hearing or other proceedings. Rather, "rest solely" appears to mean that the exemption shall apply where all the issues involved in the deci-

sion are determined mainly on the basis of an inspection, test, or election.

U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT at 44 (1947). We are not persuaded by this expansive interpretation of the exclusion. As a practical matter, we have considerable doubt about the practicality of a jurisdictional standard that would turn on the application of the word "mainly." More important, we think that respondent's proposed construction is foreclosed by the explicit wording of § 1–1502(8)(C). When Congress chose to use the word "solely" in that definitional provision, Congress knew what that word meant; and it does not mean "mainly."

We conclude that the decision of the BAR on petitioner's appeal did not rest solely on inspections, and thus was rendered in a "contested case" within the meaning of the APA. We therefore have jurisdiction to entertain the instant petition for review.

**B.**

To say that petitioner had a legal right to a trial-type hearing before the BAR on an appeal from the denial of a demolition permit is not to say that petitioner had a meritorious case to present. We agree with respondent that petitioner failed to establish that it had a right to a demolition permit, or that the BLRA erred in denying its application.

"Before the Mayor may issue a permit to demolish an historic landmark," the permit application must be reviewed in accordance with the requirements of the Historic Preservation Act. D.C.Code § 5–1004(a). The applicant is required to establish at a hearing before the Mayor or the Mayor's Agent that "issuance of the permit is necessary in the public interest, or that failure to issue a permit will result in unreason-

able economic hardship to the owner." D.C.Code § 5–1004(e); *see also District of Columbia Pres. League*, 646 A.2d at 989–91. Any person who demolishes a building in violation of D.C.Code § 5–1004 is subject to criminal and civil penalties, and other sanctions. *See* D.C.Code § 5–1010.

■ Petitioner did not and could not show that it had complied with D.C.Code § 5–1004. Petitioner abandoned any effort to meet the requirements of Section 5–1004 of the Historic Preservation Act when it withdrew its initial permit application and cancelled the hearing scheduled before the Mayor's Agent. Petitioner therefore had no right to issuance of a demolition permit, and the BLRA Administrator acted in accordance with D.C.Code § 5–1004(a) in denying petitioner's application.

It is true that D.C.Code § 5–1011(b) provides that the Historic Preservation Act does not limit the authority of the Mayor "to secure or remove an unsafe building or structure pursuant to" the Unsafe Structures Act. Had petitioner been able to show that the Mayor had exercised that authority, it might have demonstrated that the BLRA should have issued it a demolition permit as a necessary concomitant, notwithstanding the requirements of D.C.Code § 5–1004. But petitioner did not and could not make such a showing, for the Mayor—by his designated agent, the Administrator of the BLRA [8]—had elected *not* to take any action under the Unsafe Structures Act.

■ The Administrator of the BLRA chose not to exercise his authority under that Act because he found that petitioner's building was not in imminently dangerous condition. On appeal to the BAR, petitioner argued that the Act does not require a finding of imminent danger. Petitioner sought to show that the BLRA Administrator *should have* found that its building was unsafe and *should have* exercised his authority under the Unsafe Structures Act to order partial demolition (and hence to issue a permit). In this court petitioner argues that the BAR erred in not making those determinations, and in determining instead that the decision of the BLRA was not arbitrary, capricious, or clearly erroneous on the facts.

■ The fundamental flaw in petitioner's contentions is that petitioner had no legal right to require the BLRA to take action under the Unsafe Structures Act, even if petitioner could show before the BAR that such action was objectively warranted under the circumstances. The Unsafe Structures Act does not grant building owners or any other private parties the right to obtain demolition permits upon a showing that their buildings are unsafe. Rather, the Act is purely a grant of enforcement authority to the Mayor to secure or demolish unsafe structures, or to compel their owners to do so, under specified conditions as the Mayor sees fit. The exercise of this enforcement authority is committed to executive discretion. "[I]f, in his opinion," a structure is unsafe, the Mayor may require the owner to secure or remove the structure, "as may be necessary." D.C.Code § 5–601(a). If, in the Mayor's "judgment," the public safety demands immediate action, the Mayor may enter upon the premises and secure or take down the structure himself. *See* D.C.Code §§ 5–601, –602. To be sure, if the Mayor does choose to take action, his decision may be contested one way or another. *See, e.g.,* D.C.Code § 5–602, dis-

---

**8.** As used in the Unsafe Structures Act, the term "Mayor" means the Mayor of the District of Columbia "or the agent or agents designated by him to perform any function vested in" the Mayor by the Act. *See* D.C.Code § 5–601(b).

cussed earlier. But nothing in the Unsafe Structures Act entitles a private party to compel the Mayor to act if the Mayor is not of a mind to do so. In the absence of such an express legal entitlement, the decision of the Mayor, or his agent the BLRA, is not subject to judicial—or, we think, quasi-judicial—oversight. The standards applicable to such a review are lacking. Thus, it is well established that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). "The determination whether and when to institute enforcement proceedings against a specific individual is a core executive responsibility which may reasonably be viewed as having been committed to agency discretion so as to preclude substantive judicial review." *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996). *See also Simpson v. Office of Human Rights*, 597 A.2d 392, 399 (D.C.1991). *Cf.* D.C.Code § 1–1508, which provides that, while any interested person may petition the Mayor or an agency to issue, "within their discretion," a declaratory order with respect to the applicability of any law enforceable by them, the refusal of the Mayor or of an agency to issue a declaratory order "shall not be subject to review." Perhaps the Mayor could have authorized the BAR to review agency decisions not to institute enforcement actions in contested case proceedings in accordance with some standards, but we see no indication that the Mayor has done so.

This is not a case, in other words, in which the Act imposed an affirmative obligation on the Mayor to demolish petitioner's building or allow petitioner to do so. *Cf. Sierra Club, supra.* Petitioner was entitled to a demolition permit only if its application complied with the Construction Codes and other applicable law, including the Historic Preservation Act—which the BAR correctly found it did not.

### III.

In sum, we hold that the proceeding before the BAR was a contested case, and therefore we have jurisdiction to entertain the instant petition for review. The BAR rightly determined that the Historic Preservation Act required the BLRA to deny petitioner's application for a demolition permit. It is immaterial that a provision in the Historic Preservation Act preserves the authority of the Mayor to secure or remove unsafe buildings pursuant to the Unsafe Structures Act, because, as the BAR correctly recognized, the BLRA had decided not to exercise that authority. As that enforcement decision was within the BLRA's absolute discretion, our inquiry ends with those determinations, and we do not review the BAR's additional determination approving the BLRA's reason for not exercising its enforcement powers. We affirm the decision of the BLRA as being supported by substantial evidence and in accordance with law.

*So ordered.*