**COMMUNICATION WORKERS OF AMERICA, LOCAL 2336,**
Petitioner,

v.

**DISTRICT OF COLUMBIA TAXICAB COMMISSION, Panel on Rates and Rules,** Respondent.

No. 88–233.

District of Columbia Court of Appeals.

March 31, 1988.

Opinion June 23, 1988.

Norman M. Gleichman and Anthony M. Rachal III, Washington, D.C., for petitioner.

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the motion to dismiss, for respondent.

Before NEWMAN, BELSON, and ROGERS, Associate Judges.

NEWMAN, Associate Judge:

On March 31, 1988, this court issued an order dismissing for lack of jurisdiction

petitioner's appeal from respondent's emergency order of March 7, 1988. The present opinion explicates the reasons for the dismissal.

 Direct review of administrative agency orders is limited, in the absence of a statutory provision permitting review, to contested cases, pursuant to the District of Columbia Administrative Procedure Act, D.C.Code, §§ 1–1501 *et seq.* (1987 repl. vol.) (DCAPA). A petitioner seeking review of an administrative agency order, such as the emergency order issued by respondent here, must show (1) that the agency proceeding determined the legal rights, duties, or privileges of specific parties; and (2) that the proceeding below was a trial-type hearing required by law. As petitioner failed to establish that the emergency order determined the legal rights, duties or privileges of specific parties, we are compelled to dismiss the petition for lack of jurisdiction.[1]

I

This dispute arose out of a notice published by respondent on November 13, 1987, instituting Formal Case No. 87–1 to investigate and amend, on an interim basis, the adequacy of existing taxicab rates.[2] Respondent proposed an increase of forty cents per drop and solicited comments from the public and interested parties.[3] A public hearing was held on December 1, 1987, at which various parties testified. Written comments were also submitted. The majority of the parties favored an increase higher than the forty cents per drop proposal of respondent.

At a meeting on January 27, 1988, the Panel on Rates and Rules voted three to two in favor of adopting the forty cents per drop proposal despite the opposition thereto. Petitioner, Communications Workers of America (CWA), which represents hundreds of taxicab drivers in the District, applied for reconsideration of the January 27, 1988, order. Meanwhile, on February 29, 1988, the Corporation Counsel determined that he could not certify the Notice of Final Rulemaking because the Panel did not conduct its ratemaking proceeding in accordance with the contested case procedures outlined in its regulations.

On March 7, 1988, the Panel on Rates and Rules voted to reconsider its earlier rejection of CWA's motion for reconsideration and decided to consider the retroactive waiver of its own rules.[4] At the conclusion of the meeting, the Panel on Rates and Rules ordered the immediate implementation of an emergency rate increase of forty cents per drop.[5] On March 11, 1988, CWA petitioned this court for a stay pending appeal of the emergency order. CWA asserted that the Panel illegally resorted to its emergency powers and that the Panel had violated the DCAPA and its own rules by issuing the order without affording the parties a trial-type hearing.

II

The DCAPA defines a contested case as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before any agency...." D.C.Code § 1–1502(8) (1987 repl. vol.).[6] This court has previously

---

1. The Taxicab Commission's Panel on Rates and Rules recently promulgated regulations which provide for trial-type hearings prior to the issuance of orders adjusting taxicab rates. *See* 18A DCMR §§ 220–256, 299 (provisional ed. Oct. 1987).

2. *See* 34 D.C.Reg. 7318 (1987).

3. "Drop" simply means "trip." Thus, a rate increase of forty cents per drop means that any trip costs the rider forty cents more regardless of how many fare zones are traversed during the trip.

4. The Panel is authorized to waive its procedural rules in any proceeding after advising the parties of its intention to do so. 18A DCMR § 256.1 (prov. ed. Oct. 1987).

5. The Panel purported to justify its emergency action in a written order, issued on March 16, 1988, as an "order granting emergency relief."

6. Neither the District of Columbia Taxicab Commission Establishment Act of 1985, D.C.Code §§ 40–1701 *et seq.* (1986 repl. vol.), nor the DCAPA specifically provide for direct review of Taxicab Commission decisions by this court.

interpreted the words "after a hearing" in the definition of "contested case" to mean "after a trial-type hearing where such is implicitly required by either the organic act or constitutional right." *Chevy Chase Citizens Association v. District of Columbia Council,* 327 A.2d 310, 314 (D.C.1974) (en banc) (citations omitted). We have further held that our jurisdictional analysis is not complete once we have determined that the statute requires a hearing. The petitioner must show in addition that the administrative hearing resolved fact questions of specific applicability, i.e., that the hearing resolved adjudicative rather than legislative facts. In *Donnelly Associates v. District of Columbia Historic Preservation Review Board,* 520 A.2d 270 (D.C.1987), we stated that the distinction is whether the administrative body was "performing an adjudicative function, weighing particular information and arriving at a decision directed at the rights of specific individuals, or sitting in a legislative capacity, making a policy decision directed toward the general public." *Id.* at 278 (citations omitted). The analysis has consistently focused on whether the hearing involved the rights of specific parties as opposed to policy decisions directed toward the general public. *Compare Chevy Chase Citizens Association, supra* (District of Columbia City Council's decision to close a street involves policy decisions affecting the general public such as traffic flow, population density, etc. In making these decisions, the City Council [then subject to the DCAPA] tends to consult broad surveys, studies and published

reports.) *with Capitol Hill Restoration Society v. Zoning Commission,* 287 A.2d 101 (D.C.1972) (hearing on application for preliminary approval of a Planned Unit Development (PUD) is adjudicative because the Board's determination involves questions of specific applicability such as: Does the specific PUD enhance the neighborhood? Is the PUD economically viable?).

In *Capitol Hill,* we held that the Zoning Commission's order denying the preliminary application was invalid because the Commission failed to provide an adjudicatory hearing in a case clearly involving the rights and privileges of a specific developer, and opted instead for a public hearing (as required by the zoning regulations), thus treating the application as legislative in nature. Our holding in *Capitol Hill* established the proposition that our jurisdiction over agency orders is not dependent on the agency's classification of a proceeding as adjudicative or legislative. We will proceed with our own inquiry for "where the statute has required some kind of hearing, we have gone on to determine whether or not the proceeding involved was adjudicatory or legislative in nature." *Donnelly, supra,* 520 A.2d at 278. Thus, the fact that the D.C. Taxicab Commission has established trial-type hearing procedures for ratemaking is not determinative of our jurisdiction. Even if the agency chooses to provide a trial-type hearing, we will only grant jurisdiction if petitioner can also show that the proceeding at issue resolved adjudicative and not legislative facts.[7]

---

Thus, such decisions are subject to direct review only under this court's contested case jurisdiction, D.C.Code § 1–1510(a). The Taxicab Commission Establishment Act provides that in exercising its ratemaking and rulemaking authority, the Panel on Rates and Rules is subject to the requirements of the DCAPA as an agency of the District government. D.C.Code § 40–1708(b).

**7.** Petitioner points to dicta in *Donnelly, supra,* 520 A.2d at 277, where we stated that "if the regulations [of the agency] required a trial-type hearing, the contested case proceeding would be required 'by law' and we would treat it as such" (citation omitted). Petitioner argues that this language stands for the proposition that once an agency adopts contested case procedural rules, this court will automatically treat the proceed-

ing as a contested case for jurisdictional purposes. Petitioner misinterprets the *Donnelly* opinion which held that jurisdiction over an agency order will be granted only where a hearing is statutorily or constitutionally compelled and the hearing is adjudicatory as opposed to legislative in nature. *Id.* at 276. The dicta merely state that where petitioner can point to an agency regulation requiring a hearing, petitioner has overcome the first obstacle in establishing jurisdiction, i.e., that an administrative hearing is statutorily or constitutionally compelled. Reliance on *Palisades Citizens Ass'n, Inc. v. District of Columbia Zoning Comm'n,* 368 A.2d 1143 (D.C.1977), is similarly misplaced. There, we rejected the Zoning Commission's attempt to change its position by arguing on appeal that the proceeding below, which it had

We must next address the issue as to whether the emergency order of March 7, 1988, was one in which the "legal rights, duties or privileges of specific parties" were resolved or whether the order involved a policy decision directed toward the general public. We conclude that the Panel was acting in a policymaking capacity when it ordered the emergency rate increase.[8]

Petitioner points us to the legislative history of the DCAPA in arguing that ratemaking should be considered adjudicatory in nature. Petitioner notes that in *Capitol Hill, supra,* we discussed the legislative history of the DCAPA to assist us in defining the term "contested case" as used in the statute. In comparing the DCAPA to the Federal Administrative Procedure Act (Federal APA), we noted that "contested case" as used in the Revised Model State Administrative Procedure Act (Model Act), on which the DCAPA is generally based (*with notable variations*), is synonymous with the term "adjudication" in the Federal APA except for one distinction:

The term "contested case" is used in the Model Act, instead of the word "adjudication" as found in the Federal Act, to avoid the possible confusion in terminology that might result from the fact that *ratemaking* under the Federal Act is classified as "rule making", with special procedures applicable to it, whereas under the Model Act it is desired to apply the contested case procedures to ratemaking. [National Conference of Commissioners on Uniform State Laws, Handbook 207 (1961) (emphasis added).]

*Capitol Hill, supra,* 287 A.2d at 104.

Our survey of the legislative history of the Model Act in *Capitol Hill* should not be interpreted as an endorsement of the view that ratemaking is adjudicatory in nature under the DCAPA. Though the DCAPA is based on the Model Act, it differs from it in many important details. Most relevant here is the fact that the definition of "contested case" in the Model Act specifically includes ratemaking and price-fixing.[9] Our definition of a contested case

---

tried as an adjudicatory proceeding, was really legislative in nature. We based our ruling on the fact that we were satisfied that the case did involve adjudicative facts because "there was only one parcel of land involved and one owner as an applicant." *Id.* at 1147. Our holding in *Palisades* was not meant to imply that we will grant jurisdiction "without further inquiry where the agency has provided" for or actually granted the petitioner a trial-type hearing. The same may be said about our similar observation in *Schneider v. District of Columbia Zoning Comm'n,* 383 A.2d 324, 328 n. 10 (D.C.1978).

8. It should be noted that our jurisdiction over ratemaking orders of the Public Service Commission (PSC) derives from a specific statutory grant of jurisdiction, *see* D.C.Code § 11–722(2) (1981), whereas our jurisdiction over ratemaking orders of the D.C. Taxicab Commission is subject to the requirements of the DCAPA, *see* note 6, *supra.* Thus our willingness to review emergency orders of the PSC, *see, e.g., Potomac Electric Power Co. v. Public Service Comm'n,* 457 A.2d 776 (D.C.1983), has no bearing on the jurisdictional issue in this case. The fact that Congress decided to exempt the PSC from the DCAPA appellate review requirements, *see* D.C.Code § 11–722(2) (Supp. V 1972) (current version at D.C.Code § 11–722(2) (1981)), even though one of the DCAPA's central purposes was to eliminate the confusing array of appellate review requirements and channels which had resulted

from such specific statutory grants of jurisdiction, *see* S.Rep. No. 1581, 90th Cong., 2d Sess. (1968), indicates that Congress wished to preserve our jurisdiction to review public utility ratemaking and that it did not necessarily regard ratemaking decisions as contested cases reviewable under the contested case provisions of the DCAPA.

9. Section 1(2) of the Model Act defines "contested case" as "a proceeding, including but not restricted to ratemaking [price-fixing], and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Discussing this section, Professor Cooper states that the definition

reflects a belief on the part of the draftsmen of the Revised Model State Act that in proceedings before state public utility commissions leading to the establishment of rates for public utility companies, the interests of respondents and consumers alike are better served if it is required that there be made available the more complete opportunities for hearing that are required in case of adjudication.

It is recognized, however, that in other types of price fixing some states may prefer to utilize less formal procedures than those set up for contested cases under the Revised Model State Act. For this reason ... the reference to *price fixing* is bracketed....

makes no reference to ratemaking, and there is no indication in the legislative history of the DCAPA that Congress intended ratemaking to be adjudicatory in nature.[10]

We are satisfied that the Panel here was acting as a legislative body in "making policy decisions directed toward the general public." The Panel hired a consulting firm to evaluate the various rate proposals and their effect on drivers and the public (although the Panel did not adopt the recommendations) and held a public hearing in which the Panel heard testimony from representatives of the cab companies, cab drivers and citizenry. The hearing did not purport to determine the rights of specific parties, but rather was conducted "for the purpose of obtaining facts and information, and views of the public pertinent to the resolution of a policy decision." *Citizens Association of Georgetown, Inc. v. Washington*, 291 A.2d 699, 705 (D.C.1972).[11] In light of our conclusion that the emergency order did not arise from a contested case, we dismiss CWA's petition for lack of jurisdiction.

1 F. Cooper, State Administrative Law 119–20 (1965) (emphasis in original). Thus, even under the Model Act's definition, contested case procedures for ratemaking may have been intended to be limited to the public utility context.

10. *See* S. Rep. No. 1581, 90th Cong., 2d Sess. (1968), and H.R. Rep. No. 202, 90th Cong., 1st Sess. (1967).

11. Other states adopting the Model Act have not necessarily defined ratemaking actions as adjudicatory even where the local definition of "contested case" is identical to the Model Act and includes ratemaking and price-fixing. *See, e.g., City of Hartford v. Powers*, 183 Conn. 76, 438 A.2d 824 (1981) (A fare increase adopted by Connecticut Transit Company, which is subject to the Connecticut Administrative Procedure Act, implements and prescribes law and policy and constitutes a regulation. No legal rights, duties or privileges of plaintiff City of Hartford would be affected by the rate increase and thus contested case procedures were not required for adoption of increased fares.)