**Winifred BRANCH, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF PUBLIC AND ASSISTED HOUSING, Respondent.**

**No. 93–AA–1480.**

District of Columbia Court of Appeals.

Argued February 27, 1995.
Decided July 20, 1995.

---

J. Stephen Zielezienski and David Itkin, Washington, DC, for petitioner.

Sonia Bacchus, Asst. Corp. Counsel, Washington, DC, for respondent. Vanessa Ruiz, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief for respondent.

1. Termination under the Rental Housing Act or under a different provision of the Municipal Regulations would not prevent Branch from reapplying for TAP benefits.

2. 14 DCMR § 1932 states in part (emphasis added):

Before STEADMAN, SCHWELB and KING, Associate Judges.

STEADMAN, Associate Judge:

Appellant Branch challenges an administrative hearing officer's affirmance of the Department of Public and Assisted Housing's ("DPAH") termination of her Tenant Assistance Program ("TAP") benefits. Both appellant and appellee agree that Branch was not entitled to receive TAP benefits at the time or in the manner that she received them; the only issue is whether DPAH's termination of her benefits can be upheld under the fraud provision of the D.C. Municipal Regulations, which would bar her from any receiving TAP benefits in the future.[1] Because the factual findings actually made by the hearing officer do not sufficiently support the conclusion of law consistent with the governing statute, we must vacate DPAH's decision and remand the case for further proceedings.

## I.

In September 1992, Branch, who had held a TAP certificate of eligibility in 1986 but had let it expire, contacted DPAH to renew her eligibility. She was directed to Mark DeShazo, a TAP official who helped her to obtain benefits within a few months and placed her in an apartment. At that time, DeShazo was being investigated by the D.C. Police Department for participating in fraud by selling TAP benefits to ineligible persons. The Police Department turned over the results of its investigation to DPAH, and reported Branch as an aid recipient who had probably obtained her benefits through fraud.

On August 19, 1993, DPAH notified Branch that her TAP benefits would be permanently terminated under 14 DCMR § 1936[2], because

> DPAH may terminate assistance to a tenant for any of the following reasons:
> ... (d) The tenant fraudulently misrepresents eligibility for assistance, family income, or other information, with the intention of obtaining unauthorized assistance (see § 1936 of this chapter); ...

TAP has discovered that various individuals were placed in TAP because the individuals paid Mr. Mark DeShazo. None of those individuals who entered TAP with the assistance of Mr. DeShazo could have done so without this arrangement with him. Since you are also a "new" entrant into TAP and Mr. DeShazo was your worker, the agency has reason to believe that you were involved in the fraudulent scheme.

Branch requested a review of DPAH's decision. DPAH afforded Branch an independent trial-type review by a hearing examiner. Branch maintained that any fraud in obtaining her TAP benefits had been committed solely by DeShazo without her knowledge; she had simply done what she was told to do.[3] The hearing examiner concluded on October 22, 1993 that DPAH had "acted in a lawful and reasonable manner" in terminating Branch's benefits. The examiner found that "[t]here is substantial evidence to support [DPAH's] conclusion that Ms. Branch is in the TAP only and solely because of fraudulently documented eligibility."[4] However, the examiner did not make an explicit finding that Branch herself was guilty of fraud, or of precisely what that fraud consisted.

## II.

 We cannot affirm an agency decision unless its factual findings, supported by substantial evidence, rationally lead to conclusions of law and an agency decision consistent with the governing statute. *Cooper v. Dep't of Employment Servs.*, 588 A.2d 1172, 1174 (D.C.1991). Here, the hearing examiner did not make the requisite factual finding that Branch herself committed fraud[5], and how she did so; therefore, the findings are insufficient to support the conclusion that DPAH acted lawfully and reasonably in terminating Branch under the tenant fraud provisions.[6] The evidence that the hearing examiner lists to support the conclusion that Branch's eligibility was "fraudulently documented", see note 4, *supra*, does not clarify whether the hearing examiner found that Branch herself was a perpetrator of the fraud. Even if the evidence might support a finding that Branch herself committed tenant

---

*Tenants whose assistance has been terminated for reasons listed in ... (d) ... shall not be eligible for future assistance under this program.*
In turn, 14 DCMR § 1936 states in part:
DPAH shall terminate the assistance of any tenant it discovers to have done the following: (a) Fraudulently misrepresented or fraudulently documented eligibility for assistance....

3. Branch asserts that since she had been eligible for TAP benefits in the past and was simply re-establishing eligibility, she was not surprised that she received her TAP benefits quickly.

4. The evidence that the examiner found supported this conclusion included the facts that: Branch received a 'free-standing' TAP certificate even though there had been a moratorium on such certificates since December 1988; Branch was accepted into the program within a few months instead of following the usual procedure of staying on a waiting list for two to five years; Branch's registration materials were incomplete; Branch's unit had not undergone the required inspection; Branch dealt solely with Mr. DeShazo, even though he was not a member of the appropriate TAP division, Client Services; investigators credibly testified that Branch "was a tenant fraud suspect in the DeShazo affair."

5. We do not understand DPAH to argue that it could terminate a recipient for tenant fraud based on the fraudulent conduct of someone other than that recipient, such as a caseworker, in which the tenant did not participate.

6. Branch does not dispute the fact that DPAH could have terminated her benefits under the Rental Housing Act of 1985, D.C.Code § 45-2537, "Termination of eligibility", which states in part:

(b) If, at any time, the Department determines that a tenant receiving tenant assistance is not, or has ceased to be, eligible for tenant assistance, the Department shall notify the tenant and housing provider in writing, setting forth the reasons for the determination. Tenant assistance payments shall terminate on the next day the rent is due occurring at least 30 days after the date the notice is given, unless, within 15 days after the receipt of the notice, the tenant submits to the Department a written statement, under oath or affirmation, including any available supporting documents, asserting the tenant's reasons for alleging continued eligibility. Within 30 days following the receipt of the statement and documents, the Department shall make the final determination of the tenant's eligibility for continued receipt of tenant assistance.
Since we are remanding in any event, we do not here address any issues relating to termination on grounds other than for fraud.

fraud,[7] "[w]e cannot substitute our judgment for that of the agency nor make findings on issues which the agency did not address." *Cooper, supra,* at 1176. When an agency "fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C.1984).

Accordingly, we vacate the decision of DPAH's hearing examiner and remand the case for further findings or other proceedings consistent with this opinion.

7. Petitioner suggests that the evidence at the hearing was actually insufficient to support such a finding. However, the record on appeal does not include a copy of the transcript of the hearing because none was requested of the agency at the time of the preparation of the record. *See* D.C.Code § 1–1509(c). Since we are remanding in any event, we deny petitioner's motion to belatedly supplement the record in this regard. It would be advisable on remand, if the point becomes relevant, for the agency to specify the evidentiary standard used in making its decision, i.e., whether it used the normal standard of preponderance of the evidence or, since fraud is involved, the higher standard of clear and convincing.

Although we have stated that D.C.App.R. 17(b) "expressly requires the preparation of a transcript," *Cohen v. Rental Hous. Comm'n,* 496 A.2d 603, 606 (D.C.1985), such preparation is only required when a party requests that it be done. Otherwise our statement in n. 4 of *Cohen,* that the agency may require the appropriate party to pay for the transcript, would have the senseless meaning that the agency must prepare a transcript and must charge a party for that transcript even if that party did not want a transcript. Where a party is proceeding *in forma pauperis,* a proper procedure in the absence of any agency rule on the matter would be to request certification by the agency of the existence of a substantial question, the resolution of which requires a transcript, by analogy to *Hancock v. Mutual of Omaha Ins. Co.,* 472 A.2d 867 (D.C.1984). Our appellate rules do not permit submission of a tape in lieu of a written transcript in the record on appeal.