*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-968

GAIL WILLIAMS, PETITIONER,

V.

DISTRICT OF COLUMBIA HOUSING AUTHORITY, RESPONDENT.

On Petition for Review of a Decision and Order of the
District of Columbia Housing Authority
(DCHA-374-16; DCHA-42-17 C)

(Submitted July 19, 2018                                    Decided August 15, 2019)

Gail Williams, *pro se*.

*Mario Cuahutle* was on the brief for respondent.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Petitioner Gail Williams seeks review of a decision by respondent District of Columbia Housing Authority ("DCHA") terminating her housing subsidy because she permitted a person who was not a member of her household to stay in her home. For the reasons discussed below, we reverse.

## I. Procedural Posture

Ms. Williams resides in the District of Columbia and was receiving a housing subsidy from DCHA through the Housing Choice Voucher Program ("HCVP"). Following a hearing held on February 16 and April 25, 2017, a DCHA hearing officer issued an informal hearing decision, dated June 9, 2017, terminating Ms. Williams's participation in the HCVP program, as well as a supplemental memorandum, dated June 12, 2017, furthering explaining the informal hearing decision. Ms. Williams did not seek reconsideration by the Executive Director of DCHA. However, on August 28, 2017, she petitioned this court for review.

Based on representations from the parties, submitted in response to a show-cause order from this court, we held that, due to a factual dispute regarding whether the June 2017 informal hearing decision was timely mailed to Ms. Williams, we could not determine whether her petition for review by this court was timely filed. *Williams v. District of Columbia Hous. Auth.*, No. 17-AA-968, Mem. Op. & J. at 2 (D.C. Oct. 10, 2018). We therefore "remand[ed] the record to the agency to hold a hearing and to determine the facts relevant to the timeliness of Ms. Williams's petition for review." *Id.* at 3. On remand, the DCHA hearing

officer held a hearing on January 30 and February 12, 2019, and, on March 4, 2019, issued an informal hearing decision. The March 2019 decision found that DCHA did not mail a copy of the June 2017 decision to Ms. Williams, and that she did not learn of the June 2017 decision until her then-counsel called DCHA on July 28, 2017, and was provided with a copy of the decision.[1] The hearing officer therefore held that DCHA had failed to provide timely notice of the June 2017 decision to Ms. Williams. Both Ms. Williams and DCHA requested reconsideration of the March 2019 decision by the Executive Director of DCHA.[2] On April 2, 2019, the Executive Director affirmed the portion of the March 2019 decision finding that DCHA did not timely notify Ms. Williams of the June 2017

---

[1] The March 2019 informal hearing decision states that Ms. Williams's then-counsel "testified that she never received a copy of the [informal hearing decision] until after she called DCHA on July 27, 2018." We presume this was a typographical error, as the events in question took place in 2017, not 2018, and the hearing transcript confirms that Ms. Williams's then-counsel testified that she called DCHA on July 28, 2017 (not July 27, 2018).

[2] We note that, while both the June 2017 and March 2019 informal hearing decisions contain a final page entitled "Notice of Appeal Right," the term "appeal," as used in these notices, does not appear to be the correct one. For instance, the notices state that a complainant may "appeal" to the Executive Director of DCHA before an informal hearing decision becomes final, but the regulation upon which it relies, 14 DCMR § 8905.3, allows a complainant to submit a "written request" for "reconsider[ation]" to the Executive Director. Similarly, the notices state that a complainant may "appeal" a final decision of DCHA to this court, but parties seeking review of agency orders in this court must "petition for review." D.C. Code § 2-510 (2016 Repl.); D.C. App. R. 15.

decision, but vacated other portions that he determined exceeded the scope of the mandate on remand.[3]   With remand complete, the supplemental record was submitted to this court.

In light of DCHA's determination that Ms. Williams did not receive timely notice of the 2017 informal hearing decision, and its recitation of facts establishing that Ms. Williams did not receive the June 2017 decision until July 28, 2017 at the earliest, we construe her August 28, 2017 petition for review in this court as timely because, calculated according to this court's rules, she filed her petition on the thirtieth day after she received notice of the agency's decision.  D.C. App. R. 15(a)(2) ("the petition for review [from an agency order or decision] must be filed within 30 days after notice is given"); D.C. App. R. 26(a)(1) ("in computing any period of time . . . [e]xclude the day of the act"); D.C. App. R. 26(a)(3) ("[i]nclude the last day of the period unless it is a Saturday [or] Sunday").

We therefore proceed to consider the merits of Ms. Williams's petition, in which she challenges the June 2017 decision to terminate her subsidy based on the agency's determination that she had violated applicable regulations pertaining to

---

[3] The substance of the March 2019 informal hearing decision is not before this court, as Ms. Williams did not petition for review of that decision.

guest stays in her home.

## II. Factual Background

In 2016, DCHA issued to Ms. Williams three recommendations for termination from the HCVP program.  On July 6, 2016, DCHA issued a recommendation for termination based upon alleged violations of 14 DCMR § 5808.7 pertaining to non-payment of rent, disturbance of neighbors, destruction of property, and unauthorized occupants.  On September 30, 2016, DCHA issued another recommendation based upon alleged violations of 24 C.F.R. § 982.553(c) pertaining to engagement in criminal activity by a household member.  Finally, on November 15, 2016, DCHA issued a third recommendation based upon alleged violations of 24 C.F.R. § 982.551(h)(2) and 14 DCMR § 5808.3(c) pertaining to allowing unauthorized occupants in the home.[4]

Following an informal hearing held on November 16, 2016, a DCHA hearing officer issued an informal hearing decision dated November 18, 2016.

---

[4]    The DCHA recommendation for termination referenced 14 DCMR "5808.4(c)," but we presume this was a typographical error because § 5808 does not contain a 5808.4, skipping directly from 5808.3 to 5805.5, and because the language that appears in the recommendation is found in 5808.3(c).

That decision denied, for lack of sufficient evidence, DCHA's July 2016 recommendation for termination, but granted a continuance as to any issues raised in DCHA's recommendations for termination issued in September 2016 and November 2016.

A second informal hearing was held on February 16 and April 25, 2017, at which a different hearing officer considered evidence relating to the allegations remaining from DCHA's September 2016 and November 2016 recommendations for termination. As noted, the September 2016 recommendation was based upon alleged violations of 24 C.F.R. § 982.553(c) pertaining to engagement in criminal activity by a household member, and the November 2016 recommendation was based upon alleged violations of 24 C.F.R. § 982.551(h)(2) and 14 DCMR § 5808.3(c) pertaining to allowing unauthorized occupants in the home. In his June 2017 decision (discussed above), the hearing officer denied, for insufficient evidence, DCHA's recommendation for termination based upon criminal activity. However, the hearing officer affirmed the agency's recommendation for termination based on allowing unauthorized occupants in the home, finding by a preponderance of the evidence that Burdette Campbell, who was not a member of Ms. Williams's household, stayed as an overnight guest more than thirty consecutive days or more than ninety days in one calendar year, in violation of 14

DCMR § 5320.

This determination was premised on the hearing officer's factual findings that:

- Mr. Campbell is a friend of Ms. Williams.

- Mr. Campbell lives at a different residence, not in Ms. Williams's home.

- Mr. Campbell owns two vehicles, both of which were registered to Ms. Williams's residence in 2012, one of which is currently registered to Ms. Williams's residence, and both of which "have been consistently found parked outside Ms. Williams'[s] residence."

- In 2012 (on an unspecified date and time), Mr. Campbell called the police to come to Ms. Williams's residence "in response to a public disturbance" and "listed Ms. Williams'[s] residence as his own."

- Mr. Campbell visits Ms. Williams's home three days a week "and sometimes watches [her] kids."

- Mr. Campbell "has spent the night at Ms. Williams'[s] home on multiple occasions."

- Mr. Campbell cuts the grass at Ms. Williams's home.

- Mr. Campbell receives mail at Ms. Williams's address.

The hearing officer first stated that "[a] thorough review of 14 DCMR [§] 5320 provides indications that the drafters intended guest stays to mean overnight stays

versus mere visitation," and that DCHA was therefore "required to demonstrate by the preponderance of the evidence" that "any alleged unauthorized occupant stayed . . . in the unit for more than 30 consecutive overnight stays or more than 90 overnight stays in a twelve-month period." He then concluded:

> Despite having his own residence, Mr. Campbell admitted to spending 2-3 days a week at [Ms. Williams's residence]. He also admitted to spending some nights at [Ms. Williams's residence]. In one instance, it appears that he was the reporting person for an incident that occurred at 3 a.m. Mr. Campbell receives mail at and has two vehicles registered at [Ms. Williams's residence]. The evidence demonstrates that Mr. Campbell was more than a landscaper to the property as there was also a close personal relationship with Ms. Williams. I find that Mr. Campbell has too many contacts with [Ms. Williams's residence] to turn a blind eye to the fact it is more likely than not that his connections to [Ms. Williams's residence] violate 14 DCMR [§] 5320.

### III. Legal Framework

The HCVP is a federal rental housing subsidy program, referred to colloquially as "Section 8" because it was created by section 8 of the Housing and Urban-Rural Recovery Act of 1983. *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1092 (D.C. 2015). It is funded by the United States Department of Housing and Urban Development and administered locally by Public Housing

Agencies ("PHAs"); in the District, the PHA is DCHA, and the program is administered pursuant to federal and D.C. regulations. *Id.* at 1092, 1093 n.1; *Bostic v. District of Columbia Hous. Auth.*, 162 A.3d 170, 172 (D.C. 2017). The HCVP was created to help low-income families obtain decent housing and to promote economically mixed housing; to that end, it provides subsidies in the form of portable vouchers that participants can use to rent existing apartments on the private market. *Mathis*, 124 A.3d at 1092; *Bostic*, 162 A.3d at 172.

When DCHA wishes to terminate a participant from the HCVP program, both federal and D.C. regulations require DCHA to provide an informal hearing at which the participant may contest the proposed termination. 24 C.F.R §§ 982.554-982.555 (2019); 14 DCMR §§ 8902-8905 (2019). Factual determinations relating to the individual circumstances of the family must be based on a preponderance of the evidence presented at the hearing. 24 C.F.R. § 982.555(e)(6); 14 DCMR § 8905.1(b). Additionally, D.C. regulations provide that, "[t]he informal hearing shall concern only the issues for which the participant or applicant has received a notice in conformance with Subsection 8901.3." 14 DCMR § 8904.4(a). While the reference to 8901.3 is likely a typographical error, as no such subsection exists, subsection 8902.3 provides, in relevant part:

> DCHA shall give the family or applicant written notice

> of . . . any determination that is subject to [contestation via an informal hearing.] Notices . . . shall be sent by regular mail . . . . All notices shall include . . . [t]he procedures for requesting an informal hearing if the family or applicant disputes the action or decision. . . .

14 DCMR § 8902.3.

Applicable regulations provide a number of potential grounds upon which to terminate a participant from the HCVP program. As to unauthorized occupants in particular, federal regulations provide, in relevant part: "The composition of the assisted family residing in the unit must be approved by the PHA. . . . No other person [i.e., nobody but members of the assisted family] may reside in the unit . . . ." 24 C.F.R. § 982.551(h)(2) (2019) (bracketed text in original). Federal regulations also provide generally that a PHA may terminate program assistance for a participant if the family violates any family obligations under the program. 24 C.F.R. § 982.552(c)(1)(i) (2019). Similarly, 14 DCMR § 5808.3(c) (2019) states: "DCHA shall terminate assistance if [a] Family member . . . has knowingly permitted another individual who is not eligible for assistance to reside (on a permanent basis) in the unit. . . ." Additionally, D.C. regulations provide that "[a] guest may remain in the assisted unit no longer than thirty (30) consecutive days or a total of ninety (90) cumulative calendar days during any twelve (12) month period," 14 DCMR § 5320.1 (2019), and that, "[i]f an assisted Family fails to

adhere to this policy, they may be terminated from the HCVP." 14 DCMR § 5320.4.

With respect to review of DCHA decisions, we have stated that, for this court "[t]o uphold the decision of an administrative agency in a contested case under the Administrative Procedure Act," D.C. Code §§ 2-501–510 (2012 Repl.), "(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings." *Powell v. District of Columbia Hous. Auth.*, 818 A.2d 188, 196 (D.C. 2003) (citation and internal quotation marks omitted). While "[t]his court's review in contested cases of agency decision-making is generally deferential," *Mathis*, 124 A.3d at 1106, we "review the record as a whole," *Proulx v. Police & Firemen's Ret. & Relief Bd.*, 430 A.2d 34, 35 (D.C. 1981) (per curiam) (citation and internal quotation marks omitted), and may set aside an agency action if it is "[u]nsupported by substantial evidence in the record." D.C. Code § 2-510(a)(3)(E). "We have previously explained that substantial evidence is relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." *Mathis*, 124 A.3d at 1106 (citation, internal quotation marks, and brackets omitted).

## IV. Analysis

As noted, DCHA's September 2016 recommendation for termination was based on allegations of criminal activity by a household member, in violation of 24 C.F.R. § 982.553(c). In his June 2017 informal hearing decision, the hearing officer held that the evidence was insufficient to support a finding, by a preponderance of the evidence, that members of Ms. Williams's household engaged in criminal activity, and he therefore denied the recommendation for termination on those grounds. This left the November 2016 recommendation for termination, which was based on allegations of allowing unauthorized occupants to reside in the home, in violation of 24 C.F.R. § 982.551(h)(2) and 14 DCMR § 5808.3(c). The hearing officer likewise held that the evidence was insufficient to support a finding, by a preponderance of the evidence, that the multiple individuals – including Mr. Campbell – who were alleged to be unauthorized occupants actually lived in Ms. Williams's home, and he therefore denied the recommendation for termination on those grounds as well.

However, the hearing officer then proceeded to consider whether one of these individuals, Mr. Campbell, had violated the regulation pertaining to guest stays, 14 DCMR § 5320, and found, by a preponderance of the evidence, that Mr.

Campbell violated 14 DCMR § 5320.1 by staying either more than thirty consecutive days or more than ninety days in one calendar year – though the hearing officer did not specify which. Because the recommendations for termination that were before the hearing officer at that informal hearing never mentioned 14 DCMR § 5320 or the issue of guest stays, the hearing officer's consideration of this issue violated 14 DCMR § 8904.4(a), which specifies that the only issues that may be considered at an informal hearing are those for which the participant has received notice. The hearing officer's consideration and disposition of this issue also raises due process concerns, as timely and adequate notice of grounds for proposed termination must be provided before federal housing subsidies may be terminated. *See Powell*, 818 A.2d at 194 (discussing *Goldberg v. Kelly*, 397 U.S. 254 (1970), and other precedents exploring the requirements of due process in agency proceedings).[5]

Yet, even assuming that the guest stay issue was properly considered, the evidence was insufficient to support a finding that Mr. Campbell violated 14 DCMR § 5320.1. The hearing officer's factual findings were that Mr. Campbell

---

[5] It is unclear why the hearing officer addressed this issue in his informal hearing decision. The DCHA attorney briefly mentioned 14 DCMR § 5320.1 in passing during the hearing, but the guest stay issue was otherwise absent from the documents and the testimony that were before the hearing officer.

lives elsewhere, but that he registered and parked two vehicles at Ms. William's address; was once at Ms. Williams's home when the police arrived and gave the police Ms. Williams's address as his address; visits Ms. Williams's home three times per week; mows Ms. Williams's lawn; sometimes watches Ms. Williams's children; has stayed overnight at Ms. Williams's "on multiple occasions"; and receives mail at Ms. Williams's home. None of these findings addressed in any way – let alone established by a preponderance of the evidence – whether Mr. Campbell stayed at Ms. Williams's home for thirty days consecutively or for ninety days in one calendar year. To the contrary, all of this evidence is entirely consistent with a situation in which Mr. Campbell visits Ms. Williams's home frequently, but never violates the guest stay requirements.

Moreover, given the hearing officer's factual finding that Mr. Campbell was Mrs. Williams's "friend", as well as evidence in the record, including DCHA investigative memoranda, indicating that Mr. Campbell was Ms. Williams's "boyfriend," it is unsurprising and unremarkable that the hearing officer concluded that "Mr. Campbell was more than a landscaper to the property" and had "a close personal relationship with Ms. Williams." This relationship does not establish that Mr. Campbell stayed at Ms. Williams's home for thirty days consecutively or for more than ninety days in one year, and it cannot support the hearing officer's

conclusion that "Mr. Campbell has too many contacts with [Ms. Williams's home] to turn a blind eye to the fact that it is more likely than not that his connections to [her home] violate 14 DCMR [§] 5320." Contacts and connections are simply not sufficient evidence of a guest stay of thirty consecutive days or more than ninety days in one year. *Cf. Mathis*, 124 A.3d at 1108 ("[T]he Hearing Officer did not identify any sound reasons for a determination that [the guest] had in fact resided in [the HCVP participant's] apartment for more than thirty days . . . ." Thus, "examining the record as a whole, we cannot see a substantial, reasonable basis for a determination that [the guest] resided in [the HCVP participant's] home for more than thirty days.").

In sum, the hearing officer's consideration of the guest stay regulation violated 14 DCMR § 8904.4(a), which requires that HCVP participants be notified of issues to be considered at an informal hearing, and, even assuming that his consideration of the issue was proper, his conclusion of law – that Mr. Campbell violated the guest stay policy found in 14 DCMR § 5320.1 – does not flow rationally from the factual findings, nor is it supported by substantial evidence in the record.

## V. Conclusion

For these reasons, we reverse the termination decision and remand to DCHA to reinstate Ms. Williams's housing benefits.

*So ordered.*