*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-AA-0512

1000 FEET DC, INC., *et al.*, PETITIONERS,

V.

DISTRICT OF COLUMBIA
ALCOHOLIC BEVERAGE AND CANNABIS BOARD, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Alcoholic Beverage and Cannabis Board
(2024-PRO-00033)

(Argued March 27, 2025                    Decided August 14, 2025)

*Katherine E. M. McQuillen,* with whom *Mark D. Lytle* and *Brian A. Hill* were on the brief, for petitioners.

*Dia Rasinariu*, Assistant Attorney General, with whom *Brian L. Schwalb¸* Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for respondent.

Before DEAHL and HOWARD, *Associate Judges*, and STEADMAN, *Senior Judge.*

DEAHL, *Associate Judge*: This case arises from Green Theory LLC's successful application for a license to operate a medical cannabis dispensary at 4828 MacArthur Boulevard Northwest. While the application was pending, ten residents known collectively as the Wolverton Group filed a written protest with the D.C.

Alcoholic Beverage and Cannabis Board on the ground that Green Theory's proposed location was within 1,000 feet of several schools. The Board dismissed the protest for lack of standing, reasoning that only affected Advisory Neighborhood Commissions (ANCs) could raise such a protest under the relevant statute, and approved Green Theory's application.

Petitioners[1] now seek review in this court. They argue that the Board's actions should be set aside because (1) the Board's determination that only ANCs have standing to protest a cannabis retailer license is an incorrect and unconstitutional reading of the Medical Cannabis Amendment Act of 2022, and (2) the Board's decision to issue Green Theory's license is unlawful and arbitrary and capricious because federal criminal law sets enhanced penalties for the sale of marijuana within 1,000 feet of schools.

The Board counters that we lack jurisdiction to hear this case because our direct review of agency actions is limited to contested cases. D.C. Code §§ 2-510(a), 11-722. Contested cases are those in which the agency made an adjudicative decision after a trial-type hearing required by statute, regulation, or constitutional right was held, or when the agency was required to hold such a hearing before issuing

---

[1] Petitioners include three members of the Wolverton Group, three additional individuals, and 1000 Feet DC, Inc., a broader group of parents concerned about children's exposure to drugs.

its decision but declined a request to do so. *Id.* § 2-502(8); *see also Burkhardt v. D.C. Rental Hous. Comm'n*, 198 A.3d 183, 188 (D.C. 2018) (defining "contested case"). The Board argues that it was not obligated to hold such a hearing before issuing Green Theory's license. Petitioners counter that the Board's roll call hearing at which the Board's agent orally dismissed their protest satisfies the contested case requirement because it was a trial-type hearing that was required by the Board's regulations and, even if it does not, such a hearing was required by the Constitution.

We agree with the Board that it was not required to hold a contested case hearing before approving Green Theory's application. We thus have no jurisdiction to review this petition for review, and we therefore dismiss it.

## I. Background

We begin by summarizing the District's medical cannabis licensing regime as it existed at the time of Green Theory's application. A medical cannabis retailer may operate in the District if it is licensed by the Alcoholic Beverage and Cannabis Administration. D.C. Code § 7-1671.06(a)-(b). The District sets forth the requirements for the licensing process by statute, which it has amended several times. At the time of Green Theory's application, the Medical Cannabis Amendment Act of 2022 was in effect. That statute authorized unlicensed establishments like Green Theory to legally enter the medical cannabis market by applying for a license

with the Alcoholic Beverage and Cannabis Board. *Id.* § 7-1671.06a (2023). To be eligible, the unlicensed applicant had to demonstrate, among other things, that it was not located "[w]ithin 300 feet of a preschool, primary or secondary school, or recreation center." *Id.* § 7-1671.06a(a)(3)(A)(ii) (2023).

The Amendment Act also provided a mechanism for the public to provide the Board with feedback on an unlicensed establishment's application for a license. Upon receipt of the application, the Board was obliged to "provide notice" to "all Advisory Neighborhood Commissions in the affected ward for a 45-calendar day public comment period." *Id.* § 7-1671.06a(h)(1) (2023). The Act also set forth the "grounds for a protest filed by an affected [ANC]." *Id.* § 7-1671.06a(i) (2023). If "an affected [ANC]" filed a "timely protest," the Board was then required to "hold a contested case protest hearing" on the application. *Id.* § 7-1671.06a(h)(1)-(2) (2023).

Green Theory applied for a license to operate a medical cannabis dispensary at 4828 MacArthur Boulevard Northwest. On appeal, the parties do not meaningfully dispute that the proposed location was more than 300 feet away from any schools, as required by the Amendment Act.[2] But it was within 1,000 feet of

---

[2] Although petitioners' briefing asserts that Green Theory's proposed location was within 100 feet of the Little Ivies "preschool and childcare center," it does not address the Board's finding that Little Ivies did not operate as a preschool under

several schools, which would leave Green Theory subject to heightened penalties under the federal Drug Free School Zones Act, 21 U.S.C. § 860, though Green Theory's distribution would be federally prohibited regardless of where it took place, *id.* § 841(a)(1) (It is unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.").

After the local ANC declined to oppose Green Theory's application, several community members known collectively as the Wolverton Group—including several parents of students attending, and school administrators at, nearby schools—filed a written protest with the Board. The group argued that granting Green Theory's application would (1) negatively affect the peace, order, and quiet of the area, (2) create congestion, and (3) violate federal law so that it could not be approved consistent with the District's Administrative Procedures Act. *See id.* § 860 (setting enhanced penalties for the distribution of controlled substances within 1,000 feet of public and private schools); D.C. Code § 2–510(a)(3)(A) (instructing courts to set aside any agency action found to be "not in accordance with law"). Green

---

D.C. law and thus did not trigger the Amendment Act's 300 feet buffer requirement, which applies only to preschools, primary or secondary schools, and recreation centers, D.C. Code § 7-1671.06a(a)(3)(A)(ii) (2023), but not to other "child-centered business[s] or daycare[s]." Before this court, petitioners develop no argument that Little Ivies was in fact a qualifying preschool and instead focus their challenge on the Board's contravention of federal law given that Green Theory was located within 1,000 feet of several schools.

Theory moved to dismiss the protest on the ground that only ANCs have standing before the Board to protest applications for a medical cannabis retailer license.

Green Theory's owner and several members of the Wolverton Group then appeared at a roll call hearing regarding Green Theory's application. The Board's agent took the name of each protester in attendance "to create a record to reflect everyone who [was] present." She then explained that only ANCs can file protests against medical cannabis licenses and that the Board would be issuing an order to dismiss the Wolverton Group's protest. After some back and forth about the correct interpretation of the relevant law, the Wolverton Group agreed to petition for reconsideration.

The Board followed with a written order officially dismissing the Wolverton Group's protest for lack of standing. The Board reasoned that the statutory scheme "only opens protests to [ANCs]" and excludes all others from challenging a medical cannabis retailer license. The Wolverton Group filed motions for a stay and reconsideration, which the Board denied. The Board issued a medical cannabis retailer license to Green Theory. This petition for review followed.

## II. Analysis

Petitioners challenge the Board's decision to dismiss the Wolverton Group's protest and approve Green Theory's application for a medical cannabis retailer license. While they raise several challenges on the merits of Green Theory's application, we must first address the threshold question of whether we have jurisdiction to review the petition before us.

The District's Administrative Procedures Act limits this court's direct review of agency actions to contested cases, meaning those in which there has been a qualifying trial-type "evidentiary hearing . . . or at least an effort to obtain such a hearing which the agency erroneously denied." *Auger v. D.C. Bd. of Appeals & Rev.*, 477 A.2d 196, 205-06 (D.C. 1984); *see also* D.C. Code § 2-510(a) ("Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a *contested case*, is entitled to a judicial review . . . upon filing in the District of Columbia Court of Appeals a written petition for review." (emphasis added)). For a matter to be a contested case, the agency must have been required to hold (1) "a trial-type hearing," *Powell v. D.C. Hous. Auth.*, 818 A.2d 188, 193 (D.C. 2003), (2) "by the agency's enabling statute, its implementing regulations, or constitutional right," *Burkhardt*, 198 A.3d at 188 (quoting *Owens v. D.C. Water & Sewer Auth.*, 156 A.3d 715, 721 (D.C. 2017));

*Donnelly Assocs. v. D.C. Historic Pres. Rev. Bd.*, 520 A.2d 270, 277 (D.C. 1987) (even where an agency exercised its discretion to hold a trial-type hearing, the matter is not a contested case in "[t]he absence of a statutorily imposed hearing requirement," or a regulatory or constitutional mandate requiring one).

The Board asserts that this was not a contested case because it was not required by any statute, regulation, or constitutional right to hold a trial-type evidentiary hearing prior to issuing Green Theory's license. The Board maintains that only affected ANCs have standing to protest medical cannabis retailer licenses and compel a trial-type hearing. Petitioners counter that this was a contested case because the roll call hearing at which the Wolverton Group briefly appeared and learned their protest would be dismissed was a trial-type hearing required by the Board's regulations. In any event, petitioners argue that a trial-type hearing was constitutionally required because they have a protected liberty interest in directing the education and upbringing of their children, which the government may not infringe without affording them due process through a proper hearing. Petitioners claim that the Board's decision to license Green Theory to operate a medical cannabis dispensary in close proximity to their children's schools implicates this fundamental right by exposing their children to marijuana without their consent.

We agree with the Board that this was not a contested case so that we must dismiss the petition for lack of jurisdiction without reaching the merits of petitioners' claims.[3]  Absent a timely protest from an ANC, no regulation, statute, or constitutional mandate required the Board to hold a trial-type hearing before issuing Green Theory's medical cannabis retailer license.

Turning first to the Amendment Act, which governed the District's medical cannabis licensing regime at the time of Green Theory's application, we discern no requirement for a trial-type hearing under the given facts.  By its express terms, the Act required a "contested case protest hearing" only if "an affected [ANC]" filed "a timely protest" with the Board.  D.C. Code § 7-1671.06a(4)(h)(1)-(2) (2023).  Petitioners argue that the Act's exclusive reference to ANCs does not preclude standing for others who would be affected by the issuance of the license.  But even assuming without deciding that this reading of the statute is correct and the Board was *permitted* to hear petitioners' protest, that would not satisfy the contested case

_____

[3] Petitioners suggest that even if we lack jurisdiction, we may still review the Board's actions because petitioners have constitutional standing.  This argument conflates two separate threshold requirements—jurisdiction and standing.  Although a party must have constitutional standing in order to bring a case before this court, *Padou v. D.C. Alcoholic Beverage Control Bd.*, 70 A.3d 208, 211 (D.C. 2013), we must also "have jurisdiction to hear the matter," *D.C. Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1199 (D.C. 2012).  Petitioners may have standing, but that alone does not confer jurisdiction that is otherwise lacking on us.

requirement, under which a trial-type hearing must be *required* by statute (or regulation or constitutional right). *Burkhardt*, 198 A.3d at 188; *see also Donnelly*, 520 A.2d at 277 (noting that a statute's "grant of discretionary authority" to an agency to hold a hearing does not satisfy the contested case requirement). The Amendment Act plainly requires a contested case hearing only upon receipt of an ANC's protest, which did not occur here.

Second, and moving on from the Amendment Act itself, petitioners persist that the regulations implementing that Act required a trial-type hearing in the form of the roll call hearing at which their petition was summarily dismissed.[4] *See* Alcoholic Beverage and Cannabis Board, Notice of Third Emergency and Proposed Rulemaking at 73 (Dec. 6, 2023) (A "roll call hearing" is "a non-adversarial proceeding conducted by the Board or the Board's agent, in which a list of applications for a new or renewed license . . . and the protestants thereto, shall be read to the public."). In determining whether an agency proceeding qualifies as a

---

[4] The Board implemented the Amendment Act through a series of emergency regulations. *See* D.C. Code § 7-1671.13(a)(10) (authorizing the Mayor to adopt rules governing, among other things, the "processes and procedures for holding protest and enforcement hearings before the [Board]"); Mayor's Order 2020-099, 67 D.C. Reg. 11453 (Sept. 30, 2020) (delegating the authority vested in the Mayor by D.C. Code § 7-1671.13 to the Board). During the pendency of Green Theory's application, the Board's Notices of Second, Third, and Fourth Emergency and Proposed Rulemaking were all at varying times in effect. Since their relevant parts are indistinguishable, we cite to the Third Notice, which was in effect from December 6, 2023, until April 3, 2024.

trial-type hearing, we look to whether "substantive due process protections such as representation by counsel, cross-examination of adverse witnesses, fact-finding by an impartial adjudicator, or any of the other accoutrements of a trial-type hearing" are required. *Powell*, 818 A.2d at 193. Other indicia of a trial-type hearing include "the right to obtain pre-hearing discovery[] and to make opening and closing arguments." *Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1099 (D.C. 2015).

Petitioners contend that the Board's regulations imposed several trial-type processes and procedures on the roll call hearing so that it satisfies the contested case requirement. They point to regulations authorizing the Board's agent at the hearing to "identify the parties with standing and the filed protest issues, if undisputed," and to accept and request written documentation from the parties. Notice of Third Emergency and Proposed Rulemaking, *supra*, at 74. They also note that the relevant regulations prohibited the parties from communicating ex parte with the Board's agent and required that the roll call hearing be "open to the public and transcribed by a certified court reporter." *Id.* at 75.

But these features of the roll call hearing do not come close to satisfying the contested case requirement. In *Singleton v. D.C. Department of Corrections*, we held that a trial-type hearing within the meaning of the "contested case" requirement is a hearing that contains the "'full panoply' of trial-type procedural rights." 596

A.2d 56, 57 (D.C. 1991) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The mere fact that some "procedural safeguards" are required by regulation does not satisfy this test. *Id.* Although the Board's regulations here imposed some minor procedural restraints, they adopted none of the formal "accoutrements of a trial-type hearing," such as the right to confront adverse witnesses or obtain discovery, *Powell*, 818 A.2d at 193, and those regulations accurately characterized the hearing as "non-adversarial," Notice of Third Emergency and Proposed Rulemaking, *supra* at 73.

Because no statute or regulation required a contested case hearing, the remaining question is whether the Constitution did. *Powell*, 818 A.2d at 192-93. Petitioners advance two arguments as to why a trial-type hearing was constitutionally mandated in this instance. First, they invoke the Due Process Clause's requirement of sufficient process before the government may interfere with a protected liberty interest. They point to their fundamental right as parents to direct the upbringing and education of their children, and argue that this right is implicated when the government exposes children to marijuana by licensing a dispensary to operate near schools.[5] Second, petitioners claim that denying them the right to a

---

[5] Petitioners cursorily assert that the Board's licensing decision implicates several additional constitutional interests, each of which requires the government to provide sufficient process before taking action that results in a deprivation. Specifically, they claim to have protected property interests in their children's education and to be free of nuisances, and a liberty interest in their reputations, that

trial-type hearing on the ground that only ANCs have standing to protest medical cannabis retailer licenses would violate the Equal Protection Clause because individual residents have standing to protest liquor license applications (provided they meet other requirements), and there is no rational basis to treat liquor and cannabis differently in this regard. We take each argument in turn.

The Fifth Amendment "imposes procedural requirements on the government," such as notice and the opportunity for a hearing, "before it deprives individuals of protected interests." *Richard Milburn Pub. Charter Alt. High Sch. v. Cafritz*, 798 A.2d 531, 541 (D.C. 2002); *see also* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."). "[T]o determine whether a contested case hearing is constitutionally mandated" involves "a two-part inquiry." *Richard Milburn*, 798 A.2d at 541. "First, we must decide 'whether the asserted individual interests are encompassed within the Fifth Amendment's

---

have all been adversely affected by the Board's decision. We disagree. The issuance of a license to Green Theory does not invade any of these rights. Though petitioners advance, as a general principle, that an unlicensed dispensary can constitute a nuisance in the District, they do not point to any specific property interest that has been affected by the alleged nuisance. And while it is true that a child legally entitled to a public education must be afforded notice and an opportunity to be heard before that entitlement can be withdrawn, *Durso v. Taylor*, 624 A.2d 449, 455 (D.C. 1993), Green Theory's license to operate near local schools does not bear upon the right to attend those schools. Nor can it be seriously argued that one's proximity to Green Theory imposes "such a stigma or badge of disgrace" as to trigger due process protections. *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971).

protection of "life liberty and property."'" *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 672 (1977)). If so, the second step would require us to "determine what procedures are required to satisfy due process." *Id.*

We do not get beyond the first step because petitioners have failed to show any constitutionally recognized liberty interest. Petitioners' asserted interest is their right to control the education and upbringing of their children. They argue that the Board's decision to license a medical cannabis retailer near their children's schools infringes this interest by forcibly exposing their children to marijuana.

While parents have a "constitutionally recognized 'fundamental right . . . to make decisions concerning the care, custody and control of their children,'" that right is not implicated by the Board's discrete licensing decisions for businesses near their children's schools. *W.H. v. D.W.*, 78 A.3d 327, 341 (D.C. 2013) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion)). The fundamental right to direct the upbringing and education of one's children is violated by direct government interference with parental autonomy, such as compulsory education laws and other mandates that compel specific parental choices. *See, e.g.*, *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 530, 534-35 (1925) (striking down law that required parents to send children to public school); *Troxel*, 530 U.S. at 71-73 (holding it unconstitutional to disregard mother's wishes

and order her to allow one weekend of visitation per month to child's grandparents); *cf. Mahmoud v. Taylor*, 606 U.S. ---, 2025 WL 1773627, slip op. at \*5 (June 27, 2025) (upholding free exercise challenge to public school curriculum that "impermissibly burdens . . . religious exercise" absent a parental opt-out policy). By contrast, the Board's decision to license a medical cannabis retailer near some schools does not compel any parental action, and we decline to hold that parents have a constitutional right to impose their public policy preferences on the District's licensing decisions simply because there may be some downstream, incidental effects on their children.

Petitioners' argument under the Equal Protection Clause also fails. It is true that, at the time of Green Theory's application, the District's liquor licensing regime explicitly conferred standing to protest the issuance of a license to a broader range of parties than the Amendment Act did, including to groups of at least five "residents or property owners" provided that they shared "common grounds for their protest." *See* D.C. Code § 25-601(a)(2). But the disparate treatment of protesters in the Amendment Act, conferring contested case requirements only when an affected ANC raises a protest, does not raise any equal protection concerns. That is because, as petitioners concede, the Council's disparate treatment of medical cannabis and liquor licenses does not implicate any fundamental right or suspect class and is therefore subject only to rational basis review. *Frazier v. D.C. Dep't of Emp. Servs.*,

229 A.3d 131, 141 (D.C. 2020). Under this deferential standard of review, a law "is constitutionally valid so long as the challenged classification is rationally related to a legitimate governmental purpose." *Id.* (quoting *Tucker v. United States*, 708 A.2d 645, 647 (D.C. 1998)). This is not a high hurdle, and we have little trouble conceiving of several rational bases for the Council's choice to be more restrictive with who is entitled to protest medical cannabis licensing. *See id.* (a statute will fail rational basis review only if there is "a clear showing of arbitrariness and irrationality" and every "conceivable basis" for the classification is negated).

First, it is rational enough to think that cannabis has legitimate medicinal purposes that alcohol does not, so the District's interests in providing its residents with needed medicinal options could warrant streamlining the licensing process. Indeed, one of the Council's stated purposes in passing the Amendment Act was to "provide relief to patients . . . and people from marginalized communities who have been previously excluded from the medical cannabis market." *See* Medical Cannabis Amendment Act of 2022, Report on Bill No. 24-113 before the Committee on Business and Economic Development, Council of the District of Columbia, at 14 (Nov. 29, 2022). Second, the Council might have rationally viewed medical cannabis as more controversial than alcohol, so that limiting protests to affected ANCs was a rational way to avoid an excessive number of protests that could overwhelm the Board's administrative capacity. Third, in passing the Amendment

Act the Council was expressly trying to keep pace with the emergent cannabis markets in neighboring jurisdictions, so that it was rationally prioritizing the development of an emerging competitive market in the District by simplifying the licensing process. *See* Medical Cannabis Clarification and Program Enforcement Amendment Act of 2024, Report on Bill No. 25-581 before the Committee on Business and Economic Development, Council of the District of Columbia, at 2 (July 3, 2024) (describing how the Council sought to "finetune" its cannabis licensing regime so as to "remain competitive with Maryland's medical cannabis program" when it passed the Amendment Act). Those are all rational reasons, individually and in combination, to restrict who was entitled to protest these licenses.

Since petitioners had no right to a trial-type hearing under any statute, regulation, or constitutional right, this was not a contested case, and we therefore lack jurisdiction and must dismiss their petition. Contrary to petitioners' contention, our decision does not leave the District's residents without any recourse to challenge licensing decisions if their local ANC fails to file a protest. "A party aggrieved by an agency action in a non-contested case ordinarily may seek review in the Superior Court." *R.O. v. Dep't of Youth Rehab. Servs.*, 199 A.3d 1160, 1165 (D.C. 2019). Petitioners elected to file their petition for review directly in this court, and that choice subjected them to the strictures of the contested case requirement, which they do not satisfy.

## III. Conclusion

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*